SUCCESSION<br>OF<br>MCNEIL.

## BROUGHTON v. KING.

After a jury has been sworn, a continuance cannot be claimed by the counsel of a party, on the ground of want of time to prepare himself to try the case. .

A judicial sale, made at the suit of a mortgage creditor, will not be treated as null for informalities anterior to the order of seizure, except in cases of an actual want of citation, nor for informalities posterior to it not involving the violation of a prohibitory law.

Where a mortgage creditor proceeds by an order of seizure and sale, citation of the debtor is unnecessary.

Before the adoption of the Code of Practice, it was not necessary to take out an execution under an order of seizure. The sheriff served the order itself on the party in possession. Code of 1808, b. 3, tit. 19, art. 43.

The provision of the constitution, art. 69, that all process shall be issued in the name of the State, is directory to those charged with the issuing of judicial process. It regulates a mere matter of style; and its non-observance in a judicial sale cannot affect the title of a purchaser.

Judgments rendered in cases of attachment, where the defendant has not been cited and has not appeared, are *in rem*, and affect only the property attached.

APPEAL from the District Court of Concordia, *Curry*, J.

*R. N.*, and *A. N. Ogden*, for the appellant *Broughton*. The defendant could not attack *Broughton's* title, as he claimed under it. *Trahan* v. *McManus*, 2 La. 213. *Bedford* v. *Urquhart*, 8 La. 234. *Grant* v. *Walden*, 6 La. 627. A suit by attachment is a proceeding *in rem*, authorising only the sale of the property attached.

*Frost*, for the appellant *Presler*, contended that the judgment against *Presler*, having been rendered without citation or appearance, was null, citing 5 Mart. 465. 1 Ib. N. S. 9. 6 Mart. 726. 8 Ib. N. S. 145. 5 Ib. N. S. 656. 10 La. 338. 19 La. 215. 14 La. 35, 291. 16 La. 487. 2 Nutt & McC. 25. 6 Yerger, 522. 7 Howard, 99, 102, 128. 4 Ib. 401. 20 Pick. 420. 4 Peters, 474. 1 Ib. 340. 5 Howard, 517. 5 Wend. 175. 1 Smedes & Mar. 168. 19 Johns, 739. 6 Wheaton, 128. 8 Cranch, 21. 9 Pick, 259. 5 Rob. 418, 506. 7 Cow. 274. 5 Ib. 524. 1 S. & M. C. R. 620. 6 Rob. 104.

*J. Dunlap*, for the defendant.

The judgment of the court was pronounced by

ROST, J. The defendant *King* is in actual possession of a tract of land granted by government to *Joshua Presler* in 1811, and claims title under a sheriff's sale made in an attachment suit against *Edward Broughton*, who is alleged to have acquired the title of the grantee, under a judicial sale made at the suit of a mortgage creditor of the said grantee. *Presler* contends that the judgment and sale which are alleged to have divested him of his title are absolute nullities, and prays to be restored to the possession of the land, and quieted in his title. He also claims the rents and profits of the land. *Broughton* alleges that he has never been divested of his title, and that *Presler* has no claim. He prays that

BROUGHTON
v.
KING.

the land be adjudged to him, and that he may recover the rents and profits from the defendant. The defendant denies the allegations of the two other parties ; avers that he, and those under whom he claims, have been in open, peaceable, and uninterrupted possession, under a just title, since 1823, and pleads the prescription of ten and twenty years. In case of eviction he claims to be reimbursed the value of his improvements. By agreement of parties, the questions in relation to the improvements, rents and profits, were reserved, and the question of title alone submitted to the decision of the court.

The claims of *Presler* and of *Broughton* formed the object of two separate suits, which have since been consolidated. They were tried together before a jury, who found in favor of the defendant, and the two other parties having failed in their attempt to set aside the verdict, have appealed from the judgment rendered thereon. The record contains several bills of exception, which require but a brief notice. The objection made to the juror, *Forshey*, is not supported by evidence ; and the court properly refused to continue the cause after the jury had been sworn.[*] The questions of fact presented by the other bills of exception are not material to the issue, and the questions of law reserved by them are properly before us for our decision on the merits.

In support of the claim of *Presler*, various informalities are alleged, by reason of which it is contended that the order of seizure under which the other parties claim, and the sale which took place under it, are null and void. Under the views expressed by this court in the late case of *Gibson et al.* v. *Foster et al.*, *ante* p. 503, it is unnecessary to notice particularly the informalities anterior to the order of seizure, except those relating to the want of citation, or such as being posterior to it, do not carry with them the violation of a prohibitory law.

The defendant has shown an order of seizure directed to the sheriff by a court of competent jurisdiction, and the sale made under it at twelve-mouths' credit, on the second exposure. He has also produced the execution and sale under the twelve-months' bond. It is alleged that his title is void, because no writ of execution under the first order of seizure has been produced, and also because that order was given without previous citation to *Presler*.

The law did not then, and does not now, require a citation in such cases. Before the adoption of the Code of Practice, it was not necessary to take out an execution under an order of seizure. The sheriff served the order itself on the party in possession, and proceeded under it. Old Code, p. 462, art. 43.

The constitutional provision that all process shall issue in the name of the State is directory to the functionaries entrusted with the issuing of judicial process. It regulates a mere matter of style, and its non-observance in a sale made by the sheriff would not affect the title of the purchaser.

There are no other informalities alleged which can be deemed at all material. It is moreover in evidence that, before the purchase by *Broughton*, *Presler* occupied a house on the land in controversy, that *Broughton* went on the land at the time he acquired it, and that *Presler* continued to occupy the house as his tenant, paying him fifty cents a cord for the wood he cut upon the land. This arrangement continued from 1824, till some time in 1827, when the house was destroyed by fire, and *Presler* declined building another, on the ground that

---

[*] The counsel for *Broughton*, after the jury had been sworn. moved for a continuance, on the ground of want of time, since the filing of the opinion of the Supreme Court in one of the two cases, and their subsequent consolidation, to prepare himself.—REPORTER.

*Broughton* would not compensate him for improvements. If a ratification of the sale, and a voluntary execution of the order of seizure under] which it was made, were needed to support the title of *Broughton*, they would be found in those acts of *Presler*. He is undeniably divested of his title.

Among the numerous informalities alleged by *Broughton*, in avoidance of the title of the defendant, it is shown that in the attachment suit a tract of land situated on Lake Bruin, and containing about eighth hundred arpents, was attached. This land is a different tract from the one sold to satisfy the judgment, and the point is expressly made that judgments rendered in cases of attachment, without the defendant having been personally cited, are purely *in rem*, and have no legal effect whatever beyond the property attached. This question came before the former Supreme Court in the case of *Hill & McGunnegle* v. *Bowman*, 14 La. 445, and it was then held, that proceedings by attachment are not only *in rem* but also *in personam*.

The earnest desire not to disturb rules of property established by the decisions of our predecessors, has induced us to retain this case under advisement during an unusual length of time. After mature deliberation, we are unable to concur in that opinion. We do not believe, as it is there stated, that the legislature of Louisiana has considered all persons, whether they were ever in this State or not, as amenable to our courts. Laws authorising judgments *in personam* to be rendered against absentees, without citation, notice, or appearance, in direct actions *nominally* instituted against them, are subversive of all ideas of justice and common right. The seizure and sale made under those judgments of any other property but that which may in certain cases have been attached, or in which other persons may have had an interest, are spoliations. We would, unhesitatingly, arrest the execution of judgments of that description rendered elsewhere, and refuse to listen to the argument that foreign laws had taken from us the power, which we hold under our own, to afford adequate protection to our citizens. The rule which in such a case we would deem it our duty to enforce, obtains in other countries, and we cannot presume that the legislature intended a violation of it.

The view taken of the rights and liabilities of absentees in the case of *Du puy, Curator,* v. *Hunt et al. ante* p. 562, is decisive of the question under consideration. Judgments rendered in cases of attachment, where the defendant has not been cited and has not appeared, are *in rem*, and affect only the property attached. This is in accordance with the doctrine laid down on the subject by Judge *Story* and Chancellor *Kent*, and, we believe, with the jurisprudence of the other States. It conforms also with the jurisprudence of France on the subject of the *saisie-arrêt*, from which our attachment law appears to have been, in a great measure, taken. Story's Conflict of Laws, 549. 1 Kent's Com. 262. Clerk's New York Digest, *verbis* Foreign Laws and Judgments, and the authorities there cited. Code de Procédure of France, *Saisie-arrêt*.

The defendant in this case had not been personally cited, and was in court only by the attachment of a tract of land situated on Lake Bruin, which is not even shown to have belonged to him. That land alone could be sold to satisfy the plaintiff's claim. The judgment had no existence beyond it. We have, therefore, come to the conclusion that *Edward Broughton* has not been lawfully divested of his title, and that, as in relation to the land claimed, he had not been cited and was not in court, the decree homologating the monition cannot

BROUGHTON
v.
KING.

avail the defendant. Admitting that he holds under a just title, his possession has not continued during a sufficient length of time to enable him to acquire by prescription.

For the reasons assigned, it is ordered, that the judgment in this case be reversed ; that *Edward Broughton* recover from the defendant the land mentioned in his petition, and that he be forever quieted in his title to said land, against all claims and pretensions of the defendant and of *Joshua Presler*. It is further ordered, that the case be remanded for further proceedings in relation to the improvements, rents, and profits. The costs in both courts to be paid in equal proportions by *Joshua Presler* and *Edward P. King*.