## FLORANCE *v.* RICHARDSON et al.

Where the law declares that the term of an office, to which the appointment is made by no-
mination by the Executive and confirmation by the Senate, shall expire on a certain day,
but authorises the officer to hold over until his successor is appointed, and the re-nomina-
tion of the incumbent rests in the discretion of the Executive, and no particular mode is
prescribed by law by which the unwillingness of the Executive to re-nominate the incum-
bent shall be manifested, an office-copy of a written communication, addressed to the auditor
of auction sales by the secretary of the governor, informing him of the appointment of a
person in the place of the former incumbent, accompanied by the testimony of the secre-

tary that the communication was written by him, under the orders of the governor, will be sufficient evidence of the appointment of another to the place of the former incumbent. The fact that the governor directed the communication to be written, may be proved by parol.

Where an auctioneer, who had received and advertised for sale certain goods, sells them after his term of office has expired, and converts the proceeds to his own use, the sureties on his official bond, who bound themselves "that he should perform his duty as an auctioneer to all persons who shall employ him as such, during his continuance in office," will not be liable for the amount so converted.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
*Benjamin* and *Micou*, for the appellant, cited *Kuhn v. Abat*, 2 Mart. N, S. 168. *Duchamp* v. *Nicholson*, Ib. 679.

*R. Hunt*, for the defendants, cited stats. 20 March, 1813 (Moreau's Dig. *verbo* Auctioneer); 16 Feb. 1825, and 18 March, 1839, ss. 2, 5, 13 (Bull. & Curry's Dig. pp. 37, 39). C. C. 2583. 9 Wheaton, 680. Theobald, Prin. and Surety, 49. 2 Mart. N. S. 169. 7 La. 103. 3 Camp, N. P. 52. 3 Wilson, 530.

The judgment of the court was pronounced by

SLIDELL, J. This suit was instituted to recover from *Richardson*, an auctioneer, and the sureties on his official bond, the amount of sales of certain furniture of the plaintiff's, sold at auction by *Richardson*, which he received, but failed to pay over. The case comes before us upon the liability of the official sureties, *Stone* and *Freret*. Their defence turns mainly upon the question whether, at the date of the auction sale and receipt of the proceeds, *Richardson's* official capacity had expired. The sale at auction was made on the 20th March, 1844. *Richardson* was appointed and duly commissioned as an auctioneer on the — day of — 1843. The act of 16 February, 1825, sec. 4, requires auctioneers annually to enter into bond, with security, in the sum of $8,000. The act of 18 March, 1839, increased the amount of auctioneers' bonds to $10,000, and subjected the bonds to the approval of the auditor of auction sales; and the 13th section of that act declared that, all commissions for auctioneers in the city of New Orleans thereafter to be issued, should expire on the first day of February of every year; but those persons who shall be in commission on that day, may hold over until others are appointed in their places.

It appears that, in February, 1844, the governor submitted to the senate the nomination of *J. A. Bonneval* and certain others, as auctioneers for the city of New Orleans. It was not stated in the message to the senate that *Bonneval* was appointed in the place of *Richardson*. These nominations were confirmed on the 7th March, ensuing. On the 8th March, the governor's private secretary sent a communication to the auditor of auction sales, in the following words: "*J. P. Philips*, *J. Wilcox*, *D. Dupuy*, and *J. A. Bonneval* in place of *Richardson*, appointed March 7th, 1844." This communication was signed by the secretary officially. The auditor endorsed the day of receipt, informed *Bonneval* of his appointment, accepted *Bonneval's* official bond on the 18th March, 1844, and he received his formal commission on the same day. On the 19th March, 1844, the auditor addressed an official letter to *Richardson*, informing him that his official character as an auctioneer had ceased, *Bonneval* having been appointed in his place, and having complied with the requisitions of law.

These facts were shown by the testimony of *Ledoux*, the governor's secretary, who produced the office copies of the written communications referred to,

and deposed that he addressed the auditor, informing him of the appointment in the place of *Richardson*, by the governor's orders. The auditor of auction sales was also examined as a witness, and stated that all these proceedings were according to the usual course and forms of executive action, with regard to appointments of auctioneers, their bonds, and the expiration of their functions. It also was proved by the testimony of these officers that, when the commission of an auctioneer expires, the place is usually filled, without mentioning in the communication to the senate in the place of whom the new officer is appointed; but when a vacancy occurred by death or resignation, it was always stated in place of whom the appointment was made.

To the admission of the testimony of *Ledoux*, and of the documents above mentioned, exception was taken by the plaintiff, upon the ground that the removal of an officer could only be proved by the formal appointment of a successor by the governor, by formal message to the senate, designating the officer intended to be removed, as well as the officer appointed in his place; and upon the like ground, objection was made to the proof of executive usage. The testimony was, however, admitted.

This was not the case of the removal of an officer. By law, the term of office was fixed as expiring on the first day of February in every year; but with permission to the officer to hold over until another was appointed in his stead. The nomination of the officer was a matter resting in the discretion of the executive, and the law did not prescribe any particular mode in which the unwillingness of the governor to renominate an auctioneer should be manifested. The province of the senate was to confirm or reject nominations of auctioneers made by the governor. The name of *Richardson* never was sent in as renominated; and we think, under the statute, that the fact that the governor directed the secretary to address the communication in question to the auditor, was a a fact which could be shown by parol. As to the action of the auditor upon the written communication of the secretary, it is preserved in an official form, to which no objection, so far as the rules of evidence are concerned, is or can be made. We concur with the court below in the opinion, that the evidence was admissible to show the fact that *Bonneval* was appointed in the place of *Richardson*, and, being so admitted, that fact is clearly and unequivocally established.

The legal consequences from that fact are obvious. *Richardson* had ceased, before the 20th March, 1844, to be an auctioneer. No act of his, after the 19th day of March, was an official act. He had no official authority to make the auction sale on the 20th, and the sureties cannot therefore be held responsible for the receipt of the proceeds of the sale by him.

·is urged that the sale, and the collection of the proceeds, were the continuance and completion of a business, in which *Richardson* had been employed before his official character expired. It is true he had been so employed to make the sale, had advertised the goods for sale before the 19th, and the key of the dwelling house in which the goods were had also been given to him, to enable him to arrange it for the expected sale. But no wrong was done to the employer before the sale. Before the goods were sold and the proceeds were received the commission had expired, and the conversion, if there has been one, was the act of an individual and not of a public officer. The liability of the surety cannot be thus extended beyond the official term, either on general principles, or under the terms of the condition of the bond, which were that *Richard-*

FLORANCE　　son "shall perform his duty as auctioneer towards all persons who shall employ
v.　　　　him as such, during his continuance in office." See the case of *Duchamp* v.
RICHARDSON.　*Nicholson*, 2 Mart. N. S. 680.　　.　　　　　　　*Judgment affirmed*