HEKKING v. PFAFF.

(Circuit Court of Appeals, First Circuit.   December 29, 1898.)

No. 250.

1. JUDGMENTS OF STATE COURT — FAITH AND CREDIT ACCORDED BY FEDERAL
   COURTS.
      Federal and state courts are tribunals of a different sovereignty, and
   the federal courts are bound by the constitutional provision to accord no
   greater measure of faith and credit to the judgments of state courts than
   is required between the courts of the different states, and are not precluded
   from inquiring into the jurisdiction of the court in which the judgment
   was rendered.[1]

2. DIVORCE—DECREE FOR ALIMONY—JURISDICTION.
      A court is without jurisdiction to award a money judgment for alimony
   against a defendant on whom no personal service has been made, and
   who has not appeared.

3. SAME—ESTOPPEL—REMARRIAGE OF DEFENDANT.
      The marriage of a man after his wife has procured a decree of divorce
   in another jurisdiction, without personal service upon him, or his ap-
   pearance, does not estop him from denying the jurisdiction of the court
   to afterwards open the decree without notice to him, and award alimony
   against him.

4. APPEAL—RECORD—SUFFICIENCY OF EXCEPTION.
      Where a jury is waived in the circuit court, and the case tried to the
   court, a general exception to a general finding which involves mixed ques-
   tions of law and fact is insufficient to entitle the party excepting to have
   it reviewed by the circuit court of appeals.

In Error to the Circuit Court of the United States for the District
of Massachusetts.

This was an action by Christine Hekking against Henry Pfaff, Jr.,
based upon a judgment for alimony.   From the judgment of the circuit
court (82 Fed. 403), plaintiff brings error.

Charles H. Winsor (David F. Kimball, on the brief), for plaintiff in
error.

Jabez Fox (Edwin B. Hale and Gerard Bennett, on the brief), for
defendant in error.

Before COLT, Circuit Judge, and WEBB and ALDRICH, District
Judges.

ALDRICH, District Judge.   The parties to this case were married in
December, 1889, at the city of Stuttgart, in the kingdom of Wurtemberg,
Germany.   Henry Pfaff, Jr., the husband, who is the defendant here, was
then, and is now, a citizen of Massachusetts.   The wife's maiden name
was Christine Hekking, and it is not claimed that she was either a citi-
zen or resident of South Dakota at the time of her marriage, but accord-
ing to her present claim she subsequently became a resident of that
state, and was a resident in good faith for more than 90 days prior to
bringing her proceeding in such state for a divorce.   The husband was
never a citizen of South Dakota, and it does not appear that he ever re-
sided or had property there.   The wife's divorce proceedings were begun

---

[1] As to faith and credit accorded judgments of state courts by federal
courts, see note to Railroad Co. v. Morgan, 21 C. C. A. 478.

in South Dakota in December, 1892. After alleging residence, and her causes, she prayed for a divorce and for alimony. The proceeding was advanced upon the theory that the husband was not in South Dakota, and that his residence was unknown. A summons was issued, and an officer made return that the defendant could not be found. Thereupon the judge, reciting the fact that the defendant husband could not be found within the state after due diligence, that he was not a resident of said state, and that his residence was unknown, ordered that the summons be served by publication in the Sioux Valley News, that a copy of the summons be deposited in the post office directed to the defendant at Hotel zur Krone, Cassel, Germany, where it was ascertained he last was, and another copy directed to him at the city of Boston, in care of his father, at 330 Walnut avenue. It does not appear from the record that the defendant's property was attached in the state of South Dakota, and it is not claimed that the defendant had actual notice of the proceeding against him, or that he appeared therein by counsel or otherwise. It does, however, appear that the cause came on for trial in April, 1893, the husband not appearing, and, upon evidence that the order of notice had been complied with, the state court assumed jurisdiction of the cause, adjudged the bonds of matrimony between the parties dissolved, and that the plaintiff have leave to resume her maiden name. The prayer for alimony was not passed upon at this time, and there was no express reservation of that question for future consideration. In March, 1896,—nearly three years later,—upon motion of the plaintiff's attorney, leave was granted to amend the complaint, and add material allegations as to the plaintiff's lack of means of support and the defendant husband's income and ability to afford relief. There was no notice of this motion, and none in the cause other than that originally given. The defendant did not appear, and there is no evidence that he had knowledge of this proceeding. On the contrary, the fact appears from the pleadings here that he had no knowledge of the motion to amend, or of the alimony proceedings and judgment, until this suit was commenced, in July, 1896. It appears that, as the cause progressed ex parte in the South Dakota court, the decree of April, 1893, was "opened so as to allow plaintiff, as a part of said decree, an allowance for alimony and support from defendant to plaintiff," and in June, 1896, it was ordered and adjudged, after hearing allegations and proofs, that the plaintiff be allowed the sum of $25,000, to be immediately paid by the defendant to her or her attorneys, and that this order or judgment be a part of the original judgment, and take effect from the date thereof. So much for a statement of the history of the South Dakota proceedings as disclosed by the record.

The case before us is based upon the money demand feature of the South Dakota judgment, and the question is whether such judgment is binding upon the defendant, and should be upheld and enforced extra territorium. Before coming to the precise question upon which the plaintiff makes her chief contention, we may refer generally to the well-settled doctrine that the federal constitutional provision that full faith and credit shall be given in each state to the records, acts, and judicial proceedings of the courts and magistrates of every other state does not preclude inquiry into the jurisdiction of the court in which the

judgment is rendered (Simmons v. Saul, 138 U. S. 439, 448, 11 Sup. Ct. 369); and, though the federal courts are not foreign tribunals in the sense of their relations to the courts of the various states (Pennoyer v. Neff, 95 U. S. 714, 732), they are tribunals of a different sovereignty, exercising a distinct and independent jurisdiction, and bound to no greater measure of faith and credit than is required between the courts of the different states.

The question of jurisdiction being thus open to us, and it appearing from the records of the South Dakota court that no personal service was made upon the defendant, we must treat the judgment, so far as it relates to a recovery of the $25,000, or, in other words, the money part of the judgment, as not binding upon the defendant, unless the feature urged by the plaintiff, which we shall consider further on, excepts this judgment from the general rule in respect to judgments in personam. Indeed, counsel for the plaintiff makes no serious contention to the contrary of this doctrine as a general rule of law, for he says in the concluding paragraph of his brief: "Had he [the defendant] not married in this case, I would not be here presenting it, for I believe it [the judgment] would have been worthless outside the state limits of South Dakota." In view of this statement of counsel, and the well-settled doctrine to which we have referred, we do not feel called upon to discuss further the general question as to the validity of such judgments or decrees; and it may be further observed that no point is presented which calls for consideration of the question of the power of states to regulate and determine the civil status of its own citizens or residents towards the citizens or residents of other states; and there is no question here as to the power of a state to regulate the causes and the procedure upon which the marital relations between a resident of such state and a resident of another state shall be dissolved. Such questions, if ever material to the validity of such judgments and decrees, are rendered immaterial here in respect to the pecuniary feature of this judgment by the absence of personal service,—an original, fundamental, and, as a general rule, an indispensable, essential of judgments in personam.

We now come to the question on which the plaintiff principally relies. The defendant subsequently knowing of the original ex parte divorce proceeding in South Dakota, and the original decree of dissolution, and in reliance thereon, married again. Such marriage was prior to the proceeding which resulted in the decree for alimony, and the point taken is that, the defendant having recognized the original decree for divorce, and acted upon it, he ratified and made good all defects in the procedure, if there were any, and that he is not only estopped by his conduct from questioning the validity of the original judgment, but the subsequent proceeding and judgment for alimony, which it is claimed were incident thereto. The case before us was a jury-waived case, and was tried in the circuit court by a judge upon issues to the court. The question of estoppel by conduct is one of mixed law and fact, and the general finding was that the judgment on which the action is based is void, and upon such general finding judgment was ordered for the defendant. We infer from the record and the opinion of the circuit court, which is annexed thereto, that the general finding involved, in

the first instance, a finding and decision of the question of estoppel against the plaintiff. The record is incomplete, in that no bill of exceptions is disclosed, and the assignment of errors is general, and directed, first, against the decision of the circuit court that the subsequent marriage did not operate as a waiver, ratification, or an estoppel, and, second, against the general finding that the South Dakota judgment is void. General exceptions do not, ordinarily, lie, in jury-waived cases, to general findings upon mixed questions of law and fact, but are limited to specific rulings in respect to controverted points of law involved therein. We are inclined, however, in this case, to take the view most favorable to the plaintiff, and treat the first error assigned as directed against the holding, involved in the opinion of the circuit court, that the second marriage did not operate as an estoppel or ratification in respect to subsequent proceedings in the South Dakota court; and, as the pleadings indicate that both parties intended to raise this question for decision, we are disposed to consider it. This must not be accepted, however, as an indication that cases will be considered in the future without specific exceptions to rulings, and a distinct assignment of errors, but rather as an admonition that they will not. We do not think it necessary to consider and determine the correctness or incorrectness of the probable rule, sometimes questioned, that in divorce proceedings the questions of alimony and support are open until finally considered and passed upon, and that such questions are then treated as incidents of the original judgment or decree, for the reason, as it seems to us, that, if this were assumed to be strictly true, the case logically and necessarily turns upon another view. The doctrine of estoppel is an equitable doctrine; that is to say, equitable in the sense that the law holds it would be unjust, unfair, and inequitable to allow a party to take a position, and hold it, in respect to matters within his knowledge, while another party acts in reliance thereon, and then change to another and different position, to the prejudice of the one who has so acted and relied. So a rule of law has resulted which enjoins a party, under certain circumstances, from denying that which he has once asserted and acted upon as true. It may be that the defendant, having acted upon the divorce decree in South Dakota, would be estopped in a proceeding in respect to the decree of divorce from setting up its invalidity. It may be that he would be estopped from questioning the validity of the proceeding so far as what had been done at the time of his second marriage in reliance thereon. But these are questions which we need not determine, for the validity of the decree dissolving the marriage is not in question. Admittedly, the motion to open the original decree in South Dakota and the actual proceeding for alimony, which resulted in an allowance and a judgment for $25,000, were subsequent to the defendant's second marriage, and according to the record here he had no knowledge of such proceedings until this suit was brought on the South Dakota judgment. So, in order to hold according to the contention of the plaintiff, we must, by force of a supposed abstract theory or rule of law which makes things subsequent incident to, and a part of, the prior original transaction, adjudge the defendant estopped not only from denying conditions of which he had no knowledge, but conditions not in existence. As we understand it, estoppel

by conduct applies to conditions known to the party who is to be es-topped, and perhaps operates upon incidents and conditions naturally and necessarily flowing therefrom; but a rule that such estoppel should operate upon conditions not known, and especially upon things not in esse, or upon conditions resulting, as in this case, from subsequent affirmative procedure, investigation, and proofs, would give a scope and effect to estoppel by conduct beyond that disclosed in any decision brought to our attention, and would be against equity, contrary to principle, and dangerous to all interests. The doctrine of estoppel by conduct, as now understood and administered, is sometimes characterized as a harsh doctrine in practical operation. However that may be, we do not think we should be expected to unwarrantably enlarge its scope in favor of a plaintiff who, knowing the defendant to be absent and in Europe, and while his whereabouts were unknown, precipitates divorce proceedings in a distant state remote from that of the defendant husband, under circumstances which force the presumption that such forum was sought for the reason that the law of the state was more favorable to her than that of the state of her husband's residence, and so favorable to parties seeking a divorce as to be generally accepted as against public policy and morality. We do not think the defendant is estopped from denying the validity of the South Dakota proceedings subsequent to his second marriage, and, aside from the question of estoppel, the decree and judgment for alimony are void for want of notice to the defendant, and consequently of jurisdiction. The judgment of the circuit court is affirmed, with costs of this court.