(38 South. 532.)

No. 15,337.

BAKER v. JEWELL.

(Jan. 16, 1905. On Rehearing April 10, 1905.)

DIVORCE—JUDGMENT FOR ALIMONY—NONRESIDENT HUSBAND.

1. The recording of a judgment for alimony obtained by a wife against her husband in an

action for separation from bed and board or for divorce creates a judicial mortgage.

2. A marriage was entered into in Louisiana between citizens of that state, the parties intending at the time that the matrimonial domicile should continue there after the marriage. The husband abandoned his wife and the matrimonial domicile, necessitating her having recourse in Louisiana to an action for a separation from bed and board, and subsequently to a demand for a divorce. The court in Louisiana having acquired jurisdiction over the husband for the purposes of those actions has jurisdiction over all the incidental issues, demands, and remedies arising therein necessary for the settlement of the respective rights of the spouses.

### On Rehearing.

3. The court of the domicile of the marriage may, at the suit of the wife, render a decree of divorce against the nonresident husband on constructive service as provided by statute, but such court is without jurisdiction to render a decree for alimony or for costs against the nonresident husband, not served with process, and not appearing in the cause.

'Syllabus by the Court.)

Action by Desiree Baker against Walter H. Jewell. Judgment for plaintiff was reversed by the Court of Appeal, and plaintiff brings certiorari or writ of review. Dismissed.

Saunders & Gurley, for applicant, Mrs. Baker. Fenner, Henderson & Fenner, for respondent Hart Land & Improvement Co., Limited.

### Statement of Case.

NICHOLLS, J. The judgment of the Court of Appeal, parish of Orleans, was ordered up to this court for review on the application of Mrs. Desiree Baker. By that judgment that court on appeal reversed one which had been rendered in her favor in the district court. Her petition for review contains the following allegations: That she instituted proceedings against her husband in the parish of Orleans for a separation from bed and board upon the ground of abandonment and nonsupport. That she was allowed alimony pendente lite, and, in the final decree, alimony.

That she recorded the judgment allowing her alimony pendente lite in the mortgage office of this parish. That recently the Hart Land Company, having purchased the interest of her husband in certain real estate after the recordation of her judgment, brought these proceedings to have the judgment canceled in so far as it operated as a mortgage on the property purchased. That the court a qua maintained the judgment. That an appeal was prosecuted by the Hart Company to the Court of Appeal for the parish of Orleans, and that court, on June 23, 1904, rendered judgment refusing to recognize the judgment as operating a mortgage upon the sole and only ground that a judgment for alimony cannot operate as a judicial mortgage.

That petitioner in due course, to wit, June 4, 1904, applied for a rehearing, calling the court's attention to article 3321 of the Revised Civil Code:

"The judicial mortgage is that resulting from judgments (whether these be rendered on contested cases, or by default, or whether they be final or provisional) in favor of the person obtaining them."

That on the original argument of the case the court's attention was called to the case of Carroll v. Carroll, 48 La. Ann. 835, 19 South. 872, wherein your honors held that a judgment for alimony was a sufficient judgment to support an appeal. Petitioner shows that on June 23, 1904, said Court of Appeal refused the rehearing. That the decision of the Court of Appeal was erroneous, and to her prejudice; that the only question involved, namely, does a judgment for alimony, when properly recorded in the mortgage office, give rise to a judicial mortgage? is one raised for the first time in the jurisprudence of this state, and is of great importance to its jurisprudence, and is such an issue as should be examined by this honorable court under authority of article 101 of the Constitution. She annexes hereto certified copies of the judgment of the Court of Appeal, the application for a rehearing, and the refusal of the same.

The judgment of the Court of Appeal sought to be set aside was as follows:

"The Hart Land & Improvement Company, purchaser of one Jewell's right and interest to certain real estate, found against the same a judgment recorded in November, 1897, condemning Jewell to pay his wife alimony pendente lite at the rate of $100 a month from April 1, 1897.

"The company moves for the cancellation of the alleged judgment on the following grounds:

"(1) Because it has been paid, satisfied, and acquitted.

"(2) Because it was merely an interlocutory decree rendered during the pending of a suit for separation from bed and board, which could not operate as a judicial mortgage on the property of the defendant.

"(3) Because the defendant was not legally cited, and the judgment would have the effect of depriving him of his property without due process of law, in contravention of the Constitution of the United States. The return to the rule, as we glean it from objections in the note of evidence and the argument made in this court, substantially urges:

"First. That by the plea of payment plaintiff in rule has admitted the correctness of the judgment, and cannot subsequently attack it.

"Second. That the plea that the court was without jurisdiction is a purely personal plea, and cannot be urged by the plaintiff in rule.

"The first objection is not tenable.

"It has been held that the pleas of payment and want of consideration are not so inconsistent but they may well stand together, for the one does not necessarily suppose the other to be false.

"A man may pay a note, and not discover until after the payment is made that the consideration on which he gave it was wanting. Myles v. Miller, 4 Mart. (N. S.) 492.

"By parity of reasoning, Jewell may have paid the judgment without knowing that it was rendered without legal citation; and still greater latitude in pleading should be allowed a third party who is in the dark as to previous occurrences than is granted to the debtor himself.

"As to the second point, we see no good reason why a third person should not have the right to question the validity of a judgment which is invoked as bearing a judicial mortgage on his property.

"We now pass to the second ground urged by the mover as the proper one upon which to rest our conclusion.

"An order for alimony is indeterminate as to duration and amount, is under the control and largely subject to the discretion of the judge, and, even if included in a final judgment, it remains an interlocutory order, subject to modification or revocation by the judge (Imhof v. Imhof, 45 La. Ann. 717, 13 South. 90), who is exclusively vested with the manner of its execution.

"We do not consider such a judgment as susceptible of being executed without an order of the court making it executory.

"In Compton v. Arial, 9 La. Ann. 496, the plaintiff applied to the clerk for a fi. fa. for alimony decreed her by the court. From a judgment refusing to mandamus the clerk to do so an appeal was taken to the Supreme Court, which, in affirming the judgment, said:

"Of the right of the party to enforce the decree for alimony rendered in her favor there can be no question. But we consider the correct practice to be that the party should address himself to the court which rendered the decree. * * * Thereupon the court may, in its discretion, properly render an execution for the arrears of alimony unpaid.

"That order would be a guide to the clerk in issuing a fi. fa., which writ must necessarily express some definite sum. In the present case there is no allegation * * * of any application to the court for an order for a fieri facias.

"Until such an order had been had from the district judge, we do not feel able to say whether he would have allowed the whole of the amount, part of it, or none of it. It may well be assumed that he would have been guided by the circumstances presented at the time of the application. It may be that a settlement of the community in a certain way might lead him to revoke the order for alimony, or that he might find the amount awarded inadequate, or unnecessary, or excessive.

"Therefore no definite sum can be assumed as representing a claim for alimony until on application for a fi. fa. the court names a specific sum for which there shall be execution.

"Until execution issues, the amount due remains inchoate and in abeyance, and no judicial mortgage within the intendment of article 3321, Civ. Code, results from the inscription of the judgment, unless such judgment be for a definite and specific sum, and whether it be final or provisional. See, also, Guidery v. Guidery, 2 Mart. (O. S.) 135.

"The analogy suggested by respondent of tacit mortgage formerly obtaining recognition, though indeterminate, is not apt. Thus a minor's mortgage can be enforced only after the tutor's functions terminate, and only for the amount judicially ascertained to be due at that time.

"Until such judgment is rendered as declares a specific sum to be due it, it operates as a legal, and not a judicial, mortgage. Such is not the case with a decree for alimony, arising not by operation of law, but by judicial action, and which may be amended or revoked until its execution has been ordered. The remedy is in the hands of the judgment creditor. The judgment herein must be either in personam or in rem. There is no other known to the law. The former we have discussed on the theory advanced by respondent that the court in a matter of marital status had jurisdiction to render as an inseparable incident to the suit the decree for alimony (a question not intended to be now passed on), and our conclusion is that no mortgage resulted from the judgment because it was indeterminate.

"Should, on the other hand, the theory that the proceeding is in rem, be urged, the registry of the judgment would not have created a mortgage, because there was no seizure of property, which alone could invest the court with jurisdiction. Herber v. Abbott, 39 La. Ann. 1112, 3 South. 259.

"Judgment reversed, rule made absolute, and it is now ordered that the inscription of the judgment herein described be canceled so far as it affects any property purchased by the Hart Land & Improvement Company, Limited; respondents to pay costs of both courts.

"New Orleans, May 30, 1904."

### Opinion.

The wife was not in this case attempting to enforce her claim for alimony upon the property purchased by the Hart Land & Improvement Company when it caused to be issued upon the relator the rule to show cause which has given rise to the present litigation. No issue was therefore raised as to what character of proceedings she should resort to, nor what should be the formalities to be followed in the event she should attempt to exercise her rights. The only issue which the plaintiff raised was whether the recording of the judgment which defendant in rule had obtained for alimony in the records of the parish of Orleans had the effect of creating a judicial mortgage in her favor upon its property.

That that decree was susceptible of judicial enforcement through a writ of fieri facias was held by this court in the case of Compton v. Arial, 9 La. Ann. 496, cited in the judgment of the Court of Appeal.

That that decree was of character such as to sustain and warrant an appeal therefrom was decided by this court in 1896 in Carroll v. Carroll, 48 La. Ann. 835, 19 South. 872, and since that date the Constitution of 1898 has referred to the demand of the wife for alimony as a "suit," and expressly granted an appeal from it to the Supreme Court. Article 85, Const. 1898.

The action of the court in such matters is based upon judicial demands for recognition of and enforcement of asserted legal rights

for money. The decrees are rendered after issue joined either expressly or tacitly upon evidence adduced. So long as they stand unreversed or modified, they fix the rights and obligations of the parties as to that particular subject, and, if modified, they remain intact except as to the extent of the modification as continuing judgment. The amounts thereof per month being easily ascertainable by counting the number of months as shown by the decrees, subject, of course, to reduction, as are all other judgments, by any amount which may be shown to have been paid. It is true that such decrees are not based upon demands for technical debts, but it is not essential to the existence of a judgment that the rights recognized and ordered to be enforced should be based upon conventional debts. The decrees rendered against the defendants in action ex delicto for damages for personal injuries, or those based upon statutory obligations imposed on defendants, are as much judgments as are those based on technical debts. In State ex rel. Huber v. Judge et al., 49 La. Ann. 1503, 22 South. 887, this court said:

"A right to receive or demand support (or money in order to obtain support) is something other and different from a right to receive and be paid a technical legal debt. There are many cases where the right to claim and receive money is not derived from nor based upon the relation of creditor and debtor between the parties. Judgments in such cases, recognizing the right and ordering its enforcement, are not necessarily judgments for debts."

We fail to see any logical reason why decrees for alimony should not fall under and properly be classed as judgments, and, if they be judgments, recording of the same creates judicial mortgages in favor of those owning them. We are of the opinion that the judgment of the Court of Appeal holding to the contrary is erroneous. Plaintiff in rule contends, however, that the decree of the district court in favor of the wife against her husband for alimony was an absolute nullity, for the reasons that it was a personal judg-

ment for money rendered against a nonresident without citation upon him, he being at the time of the attempted service outside of the jurisdiction of the state of Louisiana.

In the consideration of that question it must be kept in mind that the demand of the defendant in rule for alimony has its origin in the relations of husband and wife which existed between them by reason of their having contracted marriage in Louisiana, which was then the actual domicile of both of the contracting parties, and which both parties intended should remain the matrimonial domicile; that the celebration of the marriage gave rise at once to reciprocal rights and obligations between them, and created a status in respect to which each of the spouses had an equal interest. The district judge was of the opinion that the judgment for alimony was not a nullity, but was legal, and he assigned the following reasons for so holding:

"The plaintiff (Mrs. Desiree Baker) and defendant (W. H. Jewell) were married in New Orleans, and established the marriage domicile there. They lived together until about 1896, when the husband left his wife, and went to New York, but without establishing any marriage domicile there. His wife (the plaintiff) was willing to follow him and live with him, but he was not willing, and she remained here. The defendant remitted sums of money for her support for some time, but finally ceased to do so, and avowed his purpose to institute suit for divorce in a western state, and obtain judgment therefor, unless plaintiff would sue here.

"Left in this situation (the plaintiff) the wife did all that she legally could do; that is, institute suit on the ground of abandonment, and judicially summoned the defendant husband to return to his home and his duties as husband. The defendant being in New York, the plaintiff posted the process at the courthouse door. Then, in accordance with the law of our state, the judge appointed a curator to the absent defendant, who was served, and who made defense at all stages of the proceedings, which in due course resulted in the judgment of separation as the alternative of defendant's refusal to return to the marriage establishment, as he had been first summoned, and then condemned by judgment to do. As an incident of the proceeding, the wife obtained a judgment for alimony by service first on the curator, but of this judgment the defendant husband, while on a visit to this city, was notified by personal service on

him of process to compel payment of said alimony.

"The judgment of separation was followed by judgment of divorce, and, no appeal having been taken from either of these judgments, or from the incidental judgment for alimony, they have become and are now final. Mover argues that the judgment was rendered without citation to the defendant husband, and that it is a mere nullity. If this were an ordinary case of a creditor suing his absent debtor, without attachment, of course any personal judgment would be of no effect; but such is not the case.

"It seems to me that there can be no doubt of the jurisdiction of the court, because the marriage domicile of the plaintiff and defendant was here. As a proceeding affecting the status of the parties in their relation to each other as spouses, as well as to society, the res involved the jurisdiction. The court of the domicile of the marriage establishment had cognizance of all issues arising at law out of the domicile marriage. It had power to enforce the reciprocal obligations of the spouses to each other so long as the marriage domicile remained here, and this jurisdiction could not be defeated by the husband's abandoning his home and his wife. His domicile quoad hoc remained at the marriage home, which he had established, and if he put himself personally beyond the reach of process the law of the state provided for the substitute upon whom process could be served, to the end that the court of the domicile could regulate the marriage status, and afford adequate relief and remedy for violated obligations as between the spouses. One of the obligations of the husband was to support his wife, and the court was vested with power to enforce the fulfillment of this duty as an incident to the suit brought before it, the object of which suit was to judicially cause the return of the husband to his home and duty as a husband, or, in default, to relieve the wife by a decree of separation. The subject-matter of this suit was the marriage status where the spouses had disagreed and the husband had abandoned the wife. It was of the nature of the process in rem, and the subject-matter, when the suit was filed, vested the jurisdiction over the spouses and over the marriage establishment in its entirety, including the settlement of all property rights or claims between the spouses springing from the marriage relation, or from any cause growing out of their status as spouses.

"The award of alimony to the wife pending the proceedings was an incident of said proceedings to regulate the status, and the defendant husband was held to the jurisdiction necessarily and as firmly as if his property had been attached. The jurisdiction being thus fixed, he was represented in due form of law. * * * I yet fail to see how, if the marriage status at issue vested the court for all general purposes with jurisdiction, the single incident for the award of alimony for the wife's support pendente lite should be excluded. If this be the law, the husband abandoning his home and fam-

ily may cancel his obligations to support them by going beyond the state limits."

We think that the conclusion reached by the district court on that branch of the case was correct.

The judgment of the Court of Appeal is erroneous, and must be set aside.

For the reasons herein assigned, the judgment of the Court of Appeal is annulled, avoided, and reversed, and the judgment of the district court dismissing the rule which was taken herein at the instance of the Hart Land Company against Mrs. Desiree Baker at its costs is hereby affirmed.

### On Rehearing.

LAND, J. In our former opinion we held that the judgment for alimony was valid as an incident to the proceedings for a separation from bed and board and for a divorce. Further reflection has convinced us that we erred in so holding. The demand for alimony and judgment rendered thereon were purely in personam, unaccompanied by seizure of or proceedings against property within the state.

Conceding that the proceedings for divorce were quasi in rem, it does not follow that the court had incidentally jurisdiction to render a personal judgment against the nonresident defendant, who was not personally cited, and who did not make a voluntary appearance.

In Herber v. Abbott, 39 La. Ann. 1112, 3 South. 259, this court held that a judgment against a nonresident defendant, not personally cited, in an attachment suit, had no validity except as against the thing subjected to the control of the court. We make the following extract from the opinion in that case:

"Indeed, we do not see how such a judgment could operate as a judicial mortgage affecting the present and future property of an absentee, not personally cited at the rendition, without impeaching our own jurisprudence and that of the United States Supreme Court. Merchants' Bank of Baltimore v. Bank of the United States, 2 La. Ann. 663; Millaudon v. Beazley, 2 La. Ann. 916; Broughton v. King, 2 La. Ann.

569; Thayer v. Tudor, 2 La. Ann. 1010; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565."

It is well settled that costs are incidental to and follow a judgment, but the Supreme Court of the United States has held that in actions in rem or quasi in rem a personal judgment for costs cannot be rendered against a nonresident not cited or appearing, though the court may order such costs paid out of the proceeds of the property subject to its control. Freeman v. Alderson, 119 U. S. 185, 7 Sup. Ct. 165, 30 L. Ed. 372. Hence the circumstances that a particular demand is incidental to a demand in rem or quasi in rem cannot affect the rule of constitutional law that a personal judgment cannot be validly rendered against a nonresident on mere constructive notice by publication or otherwise. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

Although the precise question now under consideration has not been decided by the Supreme Court of the United States, it has been held by inferior federal tribunals to be a plain proposition of law that a state court is without jurisdiction to award a money judgment for alimony against a defendant on whom no personal service has been made, and who has not voluntarily appeared in the proceedings. Bunnell v. Bunnell (C. C.) 21 Fed. 244; Hekking v. Pfaff, 91 Fed. 60, 33 C. C. A. 328, 43 L. R. A. 618.

This same doctrine is laid down by Judge Cooley as follows:

"But in divorce cases, no more than in any other, can the court make a decree for the payment of money by a defendant not served with process, and not appearing in the case, which shall be binding on him personally. It must follow in such a case that the wife, when complainant, cannot obtain a valid decree for alimony, nor a valid judgment for costs." Const. Lim. (7th Ed.) p. 584.

See, also, Rigney v. Rigney (N. Y.) 28 N. E. 405, 24 Am. St. Rep. 462; Dillon v. Starin (Neb.) 63 N. W. 12; Smith v. Smith (Vt.) 51 Atl. 1060; Anderson v. Anderson, 55 Mo. App. 268.

In De La Montanya v. 'De La Montanya (Cal.) 44 Pac. 345, 32 L. R. A. 82, 53 Am. St. Rep. 165, it was held that constructive service of summons cannot give jurisdiction in a divorce suit to award alimony and the exclusive custody of the children, where the husband and children are outside of the state, and do not appear, even if their domicile be within the state.

The solitary case of Sprague v. Sprague (Minn.) 76 N. W. 268, 42 L. R. A. 419, 72 Am. St. Rep. 636, is cited in opposition to the current of authorities already mentioned. In that case alimony was awarded against the husband, who was the plaintiff in the suit, and there was no question of the validity of the judgment as against him. The wife, who was temporarily absent from the state when the divorce proceedings were had, but who had been personally served with summons outside of the state, complained that the court was without jurisdiction, and sought to obtain judgment in a separate suit for a large amount of alimony. It is stated in the opinion that the wife judicially admitted that she had consented to the divorce proceedings. The judgment awarded a lump sum, payable out of the estate of the husband, and therefore seems to have been considered as operating on the property of the husband within the jurisdiction of the court. The case stands alone on its particular facts, and cannot be considered as contravening the well-settled principle of constitutional law that an award of alimony is a judgment purely in personam, and not in rem, or quasi in rem.

We reached this conclusion in our former opinion when we held that a decree for alimony is a judgment for money, subject to appeal, and susceptible of enforcement through a writ of fieri facias. The obligation of duty of the husband to pay alimony is not secured in this state by any lien or privilege on property, nor does it vest in the wife any rights in, to, or upon the property of the husband. Hence such a demand is purely in personam, and a judgment thereon cannot be validly rendered against the nonresident husband not personally cited or appearing without a denial of due process of law.

During the pendency of the suit for separation from bed and board the court condemned the absent defendant to pay alimony at the rate of $100 per month from April 1, 1897, and the further sum of $50 costs and $200 attorney fees.

Soon after the rendition of this order the defendant, while transiently in the state, was ordered and notified to show cause why he should not pay such alimony, and in default be punished for contempt for failing to do so. Defendant made no appearance, and no further proceedings were had on the rule. The notice of the order or decree to pay alimony did not cure the previous defect of want of citation, nor can we conceive how the service of the rule on defendant can be considered as an acquiescence on his part in the decree or its execution. The rule was predicated on the refusal of defendant to obey the order of the court, and he persisted in such refusal after service of the rule on him.

Notice of judgment cannot operate as an acquiescence therein on the part of the defendant, nor can such notice operate as a citation or summons for future proceedings in the same cause.

We are constrained to hold reluctantly that the decree of alimony in question was an absolute nullity for want of citation.

It is therefore ordered that our former decree herein rendered be vacated, that the judgment of the Court of Appeal be reinstated, and that this application for review be dismissed, at the cost of the applicant.