THOMPSON, J.
 

 Under a writ of fi. fa. issued on a judgment for alimony, an automobile of the husband was seized and advertised for sale.
 

 A temporary restraining order and preliminary injunction were applied for on the grounds (1) that the writ of fi. fa. did not follow the terms of the judgment, in that it issued for a lump sum of $2,350 and was issued without any application or showing having been made either to the court or to the clerk to have any portion of said judgment decreed executory for any amount due under its terms.
 

 (2) That petitioner was not afforded any opportunity of appearing and asserting any defense against the right of plaintiff to have issued execution on said judgment, or to have claimed any credits under the same.
 

 
 *1014
 
 (3) That in a proceeding for contempt of court petitioner’s defense was not considered by the court, and petitioner was sentenced to jail. That he applied for a certiorari and prohibition and which was pending in the Supreme Court at the time the fi. fa.' was issued; hence said writ, having been illegally issued, was null and void.
 

 (4) That while the seizure was made under a fi. fa., the sale was advertised as under a writ of seizure and sale.
 

 (5) That the automobile was exempt, being a necessary agency in the practice of his profession.
 

 A restraining order was issued, but, after a hearing, the same was dissolved with $100 as attorney fees. The preliminary injunction was refused.
 

 A suspensive appeal from that judgment was refused, but a devolutive, appeal was granted.
 

 Whereupon the present application for remedial writs was made to this court.
 

 The only questions touching the illegality and irregularity of the proceedings in the court below which we shall consider are: (1) Whether the clerk of court was authorized to issue the execution without having the amount definitely fixed by a special decree of the court, and (2) whether the pendency in the Supreme Court of relator’s application for relief from the sentence for contempt for • not paying the alimony prevented the execution of the judgment for the alimony.
 

 All other matters complained of will be determined under our appellate jurisdiction on the devolutive appeal, in the event the said appeal is perfected and prosecuted. They are not questions properly coming under our supervisory jurisdiction.-.
 

 . It appears, that the wife obtained a judgment of separation, from bed and board on September 15,. 1925. In that proceeding the husband was condemned to pay $45 per week - for the' support of his wife and children.'
 

 Qn. October 14, 1927, judgment of final divorce was rendered on application of the husband, and the alimony was continued at-the same rate payable weekly.
 

 Payments .thereafter- were ■ made on the judgment, but in irregular amounts and .at irregular periods.
 

 The amounts so paid did not equal the amount due under the judgment. ;
 

 On February 8,- 1930,' the wife filed a rule against her husband to show cause why' he should not- be decreed to be in contempt of-court for not paying the alimony in- accordance with the judgment.
 

 In the petition for the rule it was alleged that there was due on July 14, 1928, the sum of $270, and, from that date to- January 30, 1930, the amount due and payable was $3,600, making a total of $3,870.
 

 It was alleged that the payments made on the judgment between July, 1928, and February 8, 1930, the date the rule was filed, amounted to $1,510 leaving as a balance due the sum of $2,360.
 

 There was attached to the petition for rule an' itemized statement showing the amount collectable as well as the payments made thereon.
 

 And this statement was admitted to be correct in the relator’s answer to the rule for contempt.
 

 In an application filed by relator for reduction of the alimony March 17,1Q3.0, it-was adr mitted that the amount due under the judgment on July 14, 1928, was'$270, and, that
 
 *1016
 
 thereafter he became In arrears in his payments in an amount approximating the sum alleged in the rule for contempt.
 

 The writ of fi. fa. was issued on March 24, 1930, for the sum of $2,350, which was the approximate amount, due on that date as shown by the pleadings and admissions of the relator in the rule for contempt.
 

 The trial judge had these pleadings and admissions as to the amount due on the judgment before him when he considered the rule for contempt and when he found the relator guilty.
 

 The judge in his return says that under the circumstances he saw no-reason for holding a hearing to determine the portion of the judgment that was executory. Nor do we.
 

 The amount due on the judgment was definitely fixed by the admissions of the party by whom the alimony was due and owing, and it would have been doing a vain thing to require that a separate proceeding be filed to have the amount fixed for purposes of execution of the judgment, which would be but declaratory of a condition patently existing on the face of the papers.
 

 All that was necessary for the cleric to do in order to ascertain the amount for which to issue the fi. fa. was to consult the pleadings in the contempt proceedings in connection with the original judgment. That is just what he did. That is certain which can be made certain.
 

 In the ease of Compton v. Airial, 9 La. Ann. 496, it was said, in the body of the opinion, that the correct practice was that the party should address himself to the court which made the decree and make some showing by affidavit or otherwise, that the defendant has •refused to obey the same. Thereupon the court may, in its discretion, properly render an execution for the arrears of alimony unpaid. That order would be a guide to the clerk in issuing a fieri facias, which writ must necessarily express some definite amount.
 

 In the case of Baker v. Jewell, 114 La. 727, 38 So. 532, 534, it was said however:
 

 “The amounts thereof per month being easily ascertainable by counting the number of months as shown by the decrees, subject, of course, to reduction, as are all other judgments, by any amount which may be shown to have been paid.”
 

 It is clear that the first cited ease is inappropriate under the facts of the instant ease, since the amount due was already determined in a judicial proceeding, and that amount was easily ascertainable by the elerk. It required no exercise of judicial discretion on the part of the clerk.
 

 In the second case cited the question was whether a judgment for alimony was such a judgment as would operate as a judicial mortgage, and the court held that it was for the reason that the amount was easily ascertainable by a mere mathematical calculation.
 

 Without expressly approving all that was said in the Compton Case, we may say that, where a judgment allows alimony payable at certain periods, and by reason of insufficient and irregular payments arrears have accumulated so that the amount due-is indefinite and cannot be easily ascertained, some proceeding, judicial or otherwise, should be taken to ascertain the amount as a guide to the clerk and as a basis on which the execution can be issued.
 

 As we have stated, a sufficient showing was made in the instant ease.
 

 In regard to the contention that the pendency in this court of relator’s application for relief from the sentence of contempt
 
 *1018
 
 prevented the execution of the judgment for alimony against relator’s property, it is sufficient to say that the two proceedings are separate and distinct, the one from the other. A judgment debtor for alimony may be proceeded against for contempt of court for not paying the alimony as decreed, and at the same time execution against his property may he issued to collect the amount due.
 

 It would create an anomaly in our jurisprudence to hold that the execution of a judgment for alimony was dependent on the result of a proceeding for contempt for not paying the alimony.
 

 Even if the relator had been imprisoned for contempt for nonpayment of the alimony, we have been referred to no law and we know of none which would prevent the seizure and sale of his property to satisfy the judgment.
 

 .In some jurisdictions it is held that, where the body of the debtor is taken in execution, the taking operates as a prima facie discharge of the debt and as a complete suspension of further action on the part of the judgment creditor against the imprisoned debtor during the imprisonment. Corpus Juriá, vol. 34, P. 721.
 

 But this is not true under our law. The writ of capias ad satisfaciendum was abolished by Act No. 117 of 1840.
 

 The only two instances in which such a writ may be resorted to under our law is that provided for in Code of Practice, art. 729, where the debtor refuses to make a surrender of his property under special laws so providing, and no property can be found subject to execution, and in article 730, where a judgment has been rendered against a sheriff or other public officer for public money converted to his own use and not accounted for. But even in such cases the writ is only authorized after an unsuccessful attempt to execute the judgment against the judgment debtor’s property, and the execution has been returned “no property found.”
 

 In the two instances, however, the arrest and imprisonment does not satisfy the judgment nor suspend its execution.
 

 In the case of Martin v. Ashcraft, 8 Mart. (N. S.) 313, which was before the act of 1840, the question presented was whether a defendant, arrested on a ca. sa. and discharged out of custody by the plaintiff, could be again imprisoned, under a writ of the same description.
 

 It was held that a release of that kind by the plaintiff in execution did not discharge the debt as it does at common law; and, if it has not that effect, it does not discharge the person of the debtor.
 

 “So long as the judgment debt remains unsatisfied, all the means given by the laws of the land to enforce it, are open to the creditor.”
 

 Our conclusion is that the proceeding for contempt did not prevent or suspend the execution of the judgment against the relator.
 

 The writ herein issued is recalled, and the application is dismissed at applicants cost