O’NIELL, Chief Justice.
 

 On the 11th day of June, 1935, Mrs. Kathleen Van Hoose Snow obtained' a judgment of divorce and was allowed alimony at the rate of $40 per month for herself and $20 per month for her two children. She was given the care and guardianship of the children, then twelve and nine years of age. On the 22d day of October, 1935, the defendant, Lee H. Snow, obtained a rule on Mrs. Snow to show cause, on November 6, 1935, why he should not be relieved thereafter of the payment of alimony to his wife. He averred that his net income was then only $175 per month, that he was ho longer able to pay the alimony, and that Mrs. Snow had obtained employment, at which she was earning $70 per month. On the 6th day of November, 1935, the rule was dismissed as of nonsuit. On the 17th day of June, 1936, in a summary proceeding brought by Mr. Snow, the judgment by which Mrs. Snow was given the care and guardianship of the children was modified so as to allow Mr. Snow to have the children' in his care on alternate Saturday afternoons, from 2 to 6 o’clock, beginning on June 20, 1936.
 

 Mr. Snow paid the alimony up to and including the month of October, 1935, that is, up to the time when he asked to be relieved of the payment of alimony to his wife; but thereafter his payments averaged only the $20 per month for the children. On the 12th of January, 1937, Mrs. Snow filed a petition to have the amount qf the past-due alimony determined and fixed, in order that she might have the judgment executed. The delinquent payments then amounted to $595. In defense of the proceeding, the defendant pleaded: First, that Mrs. Snow had disobeyed the judgment allowing him to have the children with him on alternate Saturday afternoons, and had thereby forfeited her right to collect alimony; second, that he was earning only $140 per month, and was not then and had never been able to pay alimony to his wife; third, that he owed certain debts, antedating the judgment of divorce, and certain other debts contracted after the judgment of divorce was rendered; and, fourth, that Mrs. Snow was then and had been for three years employed at a salary of $100 per month, and was receiving royalties amounting to $25 per month from gas wells on an estate owned by her, and was collecting rents amounting to $75 per month, from tenants on the estate. Hence the defendant prayed that the demand for past-due alimony should be rejected, and that he should be relieved thereafter of the payment of alimony to his wife. He made no complaint of the obligation to pay $20 a
 
 *665
 
 month for the support of his children. After hearing the evidence the judge gave judgment for Mrs. Snow for the $595, with legal interest from the 12th day of January, 1937, that is, from the date of the filing of her petition; and the judge reserved to Mrs. Snow the right to claim the alimony that had accrued after the filing of her petition. In the judgment, the judge reduced the future payments of alimony to Mrs. Snow, from $40 to $20 a month, from and after the date of the judgment, April 19, 1937. Mr. Snow is appealing from'the judgment; and Mrs. Snow, answering the appeal, asks for a reversal of that part of the judgment which reduces the payments of alimony hereafter.
 

 On the trial of the case, the attorneys for Mr. Snow attempted to prove that Mrs. Snow had disobeyed the decree allowing him to have the children with him on alternate Saturday afternoons; and the attorneys for Mrs. Snow- objected to the testimony on the ground that it was irrelevant. It is perhaps not necessary to decide whether the objection was well founded, because most of the testimony on this subj ect was admitted, and it shows that Mrs. Snow did not disobey the judgment. On the contrary, on every Saturday afternoon on which Mr. Snow had the right to have the children with him, Mrs. Snow had them dressed up and waiting to go with their father; but, on many of these occasions, Mr. Snow neglected to call for the children. His attorneys undertook to prove that Mrs. Snow refused to bring the children to his office on the Saturday afternoons in question; but the attorneys for Mrs. Snow objected to the testimony, on the ground that it was irrelevant; and the judge, very properly, sustained the objection, because no such duty was imposed upon Mrs. Snow by the terms of the judgment. The testimony which the judge excluded was not relevant to the issue in this proceeding; i. e., whether Mr. Snow must pay alimony to his wife, and, if so, how much must he pay.
 

 When the attorneys for Mr. Snow undertook to prove that Mrs. Snow had an income of her own, the attorneys for Mrs. Snow objected to the testimony, on the ground that the court had no authority to reduce the alimony which had become delinquent after the judgment was rendered, fixing it at $40 per month. The judge overruled the objection, and heard the testimony, because the defendant was asking to be relieved of the payment of alimony in the future, as well as of the past-due alimony. The testimony, being that of Mrs. Snow herself, which was not contradicted, showed that she was employed at a salary of $75 a month at the time when the judgment of divorce was rendered, fixing the alimony at $40 a month; and that she had been so employed for a period exceeding five months before the judgment of divorce was rendered; and that she continued to be so employed until the 1st day of November, 1935. The period of employment, therefore, had expired at the time of the dismissal of Mr. Snow’s rule to have the alimony reduced, November 6, 1935. She was obliged to give up her employment because of trouble with her eyes. She was employed again for nearly eleven months, from March, 1936, to the latter part of January, 1937, during which period Mr.
 
 *667
 
 Snow was neglecting to pay the alimony which was due to her. She did not receive any revenue from the land in which she had an interest, because her mother had the usufruct of the property. Mrs. Snow sold her interest in the land to her mother for $1,200; but the price, like the salary which she had earned, went to pay debts which she had contracted for her support and that of her children. She was compelled to go into debt because Mr. Snow abandoned her in 1933, leaving her without any means of support. Assuming, for the sake of argument only, that we should consider the testimony on the subject of Mrs. Snow’s income with reference to the past-due alimony, the testimony would not justify a reduction of the past-due alimony.
 

 The testimony tendered by Mr. Snow to show the amount of debts that he had incurred after the judgment of divorce was rendered was objected to, also, on the ground that the judgment was final as to the past-due alimony. The judge overruled the objection because Mr. Snow was asking to be relieved of the payment of future alimony, as well as the past-due alimony. The testimony shows that debts to the amount of $1,547.30 were incurred by Mr. Snow after the judgment of divorce was rendered; but there is no proof that the incurring of these debts prevented Mr. Snow from paying the alimony as it fell due. Assuming, for the sake of argument only, that the testimony on the subject of the debts should be considered with reference to the past-due alimony, the testimony would not justify a reduction of the past-due alimony.
 

 When the attorneys for Mr. Snow offered testimony to show that the income from his business did not enable him to pay the alimony as it fell due, the attorneys for Mrs. Snow objected, on the ground that the judgment for the past-due alimony was final, and not subject to reduction on the ground of inability of the defendant to pay the alimony as it fell due. The judge sustained the objection. The ruling was correct, particularly in the light of the defendant’s pleadings, and the testimony relating to the question of reducing the future alimony. The allegation, in the defendant’s answer to this proceeding, that he was not then, when he filed his answer, and had never been, able to pay the alimony, was merely an expression of opinion or conclusion on his part. His allegation that his income was only $140 a month had reference to what he called his net income, as explained in his testimony. He is the proprietor of an insurance agency, in Shreveport, and depends upon commissions for his earnings or income. When he was called to the stand for cross-examination by counsel for Mrs. Snow, and was asked what his gross income was, he drew a memorandum from his pocket and said that he did not have the gross figures; that he did not have any idea what the gross income from his business had been because he did not keep any books, but he knew that his net income was $140 a month. After-wards he took the witness stand in. his own behalf and repeated that he knew that his net income was $140 a month, but did not have any idea what the gross income from his business was. We do not understand how a man in business can know
 
 *669
 
 what his net income is without knowing what the gross income is. Mr. Snow testified that he had two women employed in his office, one permanently and the other only temporarily. We infer that the business was not such a small affair, or so lacking in bookkeeping or system, that the proprietor could not have ascertained, if he desired to ascertain, what was the gross income of the business. He did not give the court any information as to what expenditures he had deducted from his monthly income, in arriving at the result that his net income was only $140 per month. He said that he had married again, and that the expenses of his new household amounted to about $125 per month; but, on cross-examination, it developed that the second wife had means of her own, having an income from rents of property which she owned, and from mortgages which she held, and from an estate which she was heir to. Mr. Snow admitted that his second wife’s income was more than $100 per month, and that she was well able to take care of herself; but he said that he did not know how great her income was, or whether it was as much as $300 per month.
 

 When the defendant in a suit for alimony pleads merely that he is unable to pay the alimony, he states only his opinion or conclusion as to how liberal he can afford to be in that respect; and when he states the amount of the net income from his business, and refuses or fails to say what the gross income is, he deprives the court of its authority to pass judgment upon the fairness or propriety of the deductions which he has made. It is the province of the judge, and not of the defendant, to calculate or estimate the net income, from the gross income, of a man’s business, in fixing the rate of alimony, in a divorce suit.
 

 The article of the Civil Code, article 160, which authorizes the judge to allow alimony to a divorced woman, limits it to the extent that it shall not exceed one-third of the income of the divorced husband, and declares that the allowance of alimony shall be revocable if it becomes unnecessary, or if the divorced wife remarries. Article 232 of the Civil Code declares that, when a person who has been ordered to pay alimony is placed in such a situation that he can no longer pay it, or when the person receiving the alimony is no longer in need of it, in whole or in part, “the discharge from or reduction of the alimony may be sued for and granted.” That means, of course, that the discharge from or the reduction of the alimony may be granted from and after the time when it is sued for, or from the time when it is asked for in answer to a suit to enforce the payment of the alimony, as in this case. But there is no indication or suggestion in these articles of the Civil Code that a judgment for the payment of alimony in the future may be canceled as to alimony which has accumulated since the judgment was rendered, on the defendant’s complaining, after failing' to pay the alimony, that he was unable to pay it when it came due. There is a statute, Act No. 189 of 1898, which provides that one who has failed to obey an order or a judgment condemning him to pay alimony shall not be held to be in contempt of court, if the failure was due to inability to comply with the' order or judgment, even though the inability existed when the order or judgment was ren
 
 *671
 
 dered. But the statute only relieves the-delinquent debtor of punishment and of the odium of being held to be in contempt of court, for his failure to pay. It does not relieve him of the debt itself. The statute declares:
 

 “That failure to obey an order or judgment of Court, when such order or judgment is in effect an order or judgment for the payment of money, shall not. be construed as a contempt, if it appears that the failure to obey is due to inability to comply with the order or judgment which inability existed when the order or judgment was rendered.”
 

 The title of the statute, as well as the text, makes it plain that its purpose is only to protect the delinquent debtor from being held in contempt of court, if he was unable to pay. The title of the act is “An Act. To carry into effect Article 177, of the Constitution [of 1898], and to limit the power of courts to punish contempts of court.” Article 177 of the Constitution of 1898 is retained exactly in the Constitution of 1921, as section 17 of article 19 thus: “The power of the courts to punish for contempt shall be limited by law.” To relieve a debtor from the odium of being in contempt of court, or of liability to punishment, for having failed to pay his debt when and as it came due, is a very different thing from releasing him from the debt itself. See State ex rel. Huber v. King, Judge, 49 La.Ann. 1503, 22 So. 887. See, also, Edwards v. Perrault, 170 La. 1011, 1016, 1017, 129 So. 619, 621, where the court upheld a seizure of the defendant’s automobile for past-due alimony, and, at the same time, in Perrault v. Edwards, 170 La. 671, 129 So. 125, affirmed a conviction and sentence for contempt of court, for failure to pay the alimony, thus:
 

 “In regard to the contention that the pendency in this court of relator’s application for relief from the sentence of contempt prevented the execution of the judgment for alimony against relator’s property, it is sufficient to say that the two proceedings are separate and distinct, the one from the other. A judgment debtor for alimony may be proceeded against for contempt of court for not paying the alimony as decreed, and at the same time execution against his property may be issued to collect the amount due.”
 

 In Lorson v. Madere, 149 La. 95, 88 So. 701, it was said that Act No. 189 of 1898 had "taken the trial of proceedings for contempt, for failure to pay alimony, out of the rule and the line of decisions in other jurisdictions, by allowing the defendant in the rule for contempt to exculpate himself by showing that, notwithstanding the judgment condemning him to pay the alimony, he was in fact unable to pay it. The converse of the proposition is that, in a proceeding, not for contempt, but to compel the payment of the alimony, or in a proceeding to be relieved of it, the defendant cannot be discharged from the debt for the past-due alimony by showing that he was unable to pay it when and as it came due.
 

 In Donnels v. Bouillion, 165 La. 145, 115 So. 439, the defendant was held to be in contempt of court, and was penalized, for-failing to pay alimony pendente lite during the pendency of an appeal which he had taken from a judgment of separation from bed and board. On the trial of the rule for
 
 *673
 
 contempt the judge refused to hear evidence to show that the defendant was unable to pay the alimony when and as it came due, because of sickness, which had set in after the judgment or order allowing the alimony was rendered. It was contended by counsel for the plaintiff that Act No. 189 of 1898 did not admit of proof of inability to pay, on the trial of a rule for contempt, unless the “inability existed when the order or judgment was rendered.” But it was held, of course, that an unavoidable inability to pay alimony was a sufficient defense in a rule for contempt for failing to pay, even before the statute was enacted, and that the purpose of the statute was merely to make such inability a sufficient defense in cases where the inability existed at the time when the judgment or order allowing the alimony was rendered. There is no intimation in that decision that one who has been condemned in a final judgment of divorce,to pay alimony, and who, without demanding a reduction of the alimony, has become delinquent in his payments until a considerable debt has accumulated, may be relieved of the debt by showing that he was unable to pay the alimony when and as it came due, when the divorced wife, to whom the alimony is due, has remained in need of it, or has gone into debt for the want of it.
 

 Counsel for the defendant cite and rely upon the decisions in the following cases: Compton v. Airial, 9 La.Ann. 496; Imhof v. Imhof, 45 La.Ann. 706, 13 So. 90; Baker v. Jewell, 114 La. 726, 38 So. 532, 536; Abrams v. Rosenthal, 153 La. 459, 96 So. 32; Brund v. Huth, 154 La. 1054, 98 So. 664, 666; and the decision rendered by the Supreme Court of Mississippi in Gallant v. Gallant, 154 Miss. 832, 123 So. 883, construing the decree rendered by the Supreme Court of Louisiana in the suit of Mrs. Gallant [Hillman] v. Gallant, 148 La. 82, 86 So. 661. All of these decisions except the one in the Mississippi case have reference to alimony pendente lite. All that was decided in Compton v. Airial was that the clerk of the court that ordered the payment of the alimony pendente lite could not be compelled by mandamus to issue a writ of fieri facias for the arrears of alimony, until the plaintiff had asked for and obtained from the judge an order fixing the amount of the past-due alimony. Referring to Compton v. Airial, in Edwards v. Perrault, 170 La. 1011, 1016, 129 So. 619, 621, it was said:
 

 “Without expressly approving all that was said in the Compton Case, we may say that, where a judgment allows alimony payable at certain periods, and by reason of insufficient and irregular payments arrears have accumulated so that the amount due is indefinite and cannot be easily ascertained, some proceeding, judicial or otherwise, should be taken to ascertain the amount as a guide to the clerk and as a basis on which the execution can be issued.”
 

 In Edwards v. Perrault, however, it was held that there was no necessity for a judicial determination of the amount of the alimony in arrears, before the issuing of the writ of fieri facias, because the defendant had admitted the amount that remained unpaid, in his answer to a rule to show cause why he should not be held in contempt of court, in Perrault v. Edwards, 170 La. 671, 129 So. 125. Compton v. Airial is not authority for the proposition,
 
 *675
 
 and in fact there is no authority for the proposition, that a woman to whom alimony is due under a judgment against her husband must first bring a proceeding such as this, and have the amount of the past-due alimony determined by another judicial decree, before she can have execution issued on the original decree condemning the husband to pay the alimony.
 

 The only ruling that was made in Imhof v. Imhof, on the subject of alimony, was that this court did not have jurisdiction of an appeal from an order setting aside a writ of fieri facias for the collection of one month’s alimony pendente lite, at $45 per month. It was said in the course of the opinion that an order to pay alimony pen-dente lite was an interlocutory order and was subject to modification at any time; which, of course, nobody disputes.
 

 The decision rendered in Baker v. Jewell is favorable to the plaintiff in this case. Miss Baker and Mr. Jewell were married in New Orleans and established their matrimonial domicile here. Jewell moved to New York and threatened to move to a western state and sue for a divorce. Mrs. Jewell brought suit against him in New Orleans, for a decree of separation from bed and board, and in the suit she obtained an order for the payment of alimony pendente lite at the rate of $100 per month. Service of citation was had by posting the process at the courthouse door, and by serving it upon a curator ad hoc, appointed to represent the absent defendant. Mrs. Jewell obtained the judgment of separation from bed and board, and, ultimately, a judgment of divorce. Meanwhile she had recorded in the mortgage office the order or judgment for the payment of alimony pendente lite at $100 per month. The Hart Land Company, having bought from Mr. Jewell his interest in certain real estate in New Orleans, after the order or judgment for the payment of the alimony pendente lite was recorded in the mortgage office, proceeded summarily to have the order or judgment for alimony canceled in so far as it purported to be a judicial mortgage on the property which the Hart Land Company had bought from Jewell. The Hart Land Company set up two separate -and distinct reasons for demanding a cancellation of the judgment in so far as it purported to be a judicial mortgage, viz.: First that the judgment for alimony was a judgment in personam, and was therefore null for want- of personal service of citation on the defendant, Jewell; and, second, that a judgment for alimony payable in future installments was not a final judgment and hence, even if valid, could not have the effect of a judicial mortgage. The civil district court held that the suit for alimony pendente lite was only an incident of the suit for separation from bed and board, of which the court had jurisdiction without personal service of citation, and hence that the judgment for alimony pendente lite was a valid judgment; and the court held also that the judgment for alimony pendente lite was a final judgment, as long as it remained unaltered by a judicial decree, and'therefore that it had the effect of a judicial mortgage. The Hart Land Company appealed to the Court of Appeal, and that court, in its judgment, pretermitted the question of validity of the judgment for alimony, bat held that the judgment did not have the effect of a judicial mortgage because no definite sum
 
 *677
 
 could be deemed to be due under the judgment. Hence the Court of Appeal reversed the judgment of the civil district court, and ordered the judgment for alimony canceled in so far as it had the effect of a judicial mortgage on the property which the Hart Land Company had bought from Jewell. Mrs. Jewell brought the case to the Supreme Court on a writ of review; and, on the original hearing, this court reversed the ruling of the Court of Appeal, and reinstated and affirmed the decision of the civil district court, both as to the validity of the judgment for alimony and as to its having the effect of a judicial mortgage. On rehearing, the court adhered to its decision that the judgment for alimony was a judgment in personam, having the effect of a judicial mortgage; but the court held that the judgment for alimony, having been rendered without service of citation on the defendant in person, was null, for the very reason that it was a judgment in personam. In adhering to the decision, on rehearing, that the judgment for alimony was a judgment in personam, the court said:
 

 “We reached this conclusion in our former opinion when we held that a decree for alimony is a judgment for money, subject to appeal, and susceptible of enforcement through a writ of fieri facias.”
 

 There is nothing appropriate to this case in Abrams v. Rosenthal. The only question presented in the case was the amount to be allowed as alimony pendente lite, and the court, having determined the amount to be allowed, said, en passant, at the conclusion of the opinion, that a judgment for alimony pendente lite was subject to amendment, and that, if the defendant's income shotdd increase, or if the plaintiff’s income should decrease, the plaintiff might obtain relief by applying to the court of original jurisdiction. That, of course, had no reference to past-due alimony. In fact, the case had been before the Supreme Court before, and had been remanded. Abrams v. Rosenthal, 151 La. 987, 92 So. 567. A comparison of the two reports of the case shows that the appeal was from the original order fixing the alimony pen-dente lite, and that the court was dealing with only the future alimony.
 

 The case of Braud v. Huth was an appeal by a divorced woman, from a judgment condemning the divorced husband to pay $75 a month alimony to his minor child, confided to the care of the mother. This court, finding that the husband’s income was then $12,000 per annum, increased the judgment for alimony for the child to $125 a month. But, on an application by the husband for a rehearing, the court amended its decree so that the increase, which this court allowed, in the rate of the alimony, should not have effect previous to the date of the increase. It was observed that the payment of alimony by a father to his child is founded not primarily upon the judgment condemning him to pay alimony, but upon his natural and legal obligation to support the child. Hence it was said that, in cases of need, a judgment for alimony might be made retrospective, thus:
 

 “But the fact that the father has failed to provide suitably for his child for a time affords no warrant for this court to capitalize the arrears of what he should have contributed over and above what he did contribute, and award them now to the child in one lump sum. That would not be
 
 *679
 
 awarding her alimony, but furnishing her with capital; for the $75 per month allowed by the district [court’s] judgment did suffice for her actual maintenance, even though insufficient to maintain her in the manner in which we think her father should maintain her.
 
 The case would be different, if we thought the amount contributed had not sufficed to maintain her at all, and the mother had herself been obliged to furnish necessaries for the child’s support.”
 
 (The italics are ours.)
 

 In this case, it appears that Mrs. Snow’s mother was obliged to contribute to Mrs. Snow’s support, while her husband was failing to pay the alimony for which she held a judgment against him. She is not asking for alimony antedating the judgment which allowed her the alimony. She is asking only for the alimony that has accrued since the judgment was rendered. In that respect the case is not like Braud v. Huth. In Curtiss v. Fisher, 186 La. 126, 171 So. 716, the court increased the rate of alimony which had been awarded to a divorced woman, the increase being allowed because of a change in the financial condition of both parties; but the increase went into effect only from and after the time when it was applied for.
 

 In Gallant v. Gallant, 154 Miss. 832, 123 So. 883, Mrs. Gallant, a divorced woman, undertook to have a Louisiana judgment for alimony ordered executed by a decree of the court in Mississippi, in which state the divorced husband had established his domicile. The defense urged against the suit in Mississippi was that the Louisiana judgment for alimony, payable in monthly installments, was not a final judgment, even as to the installments that were past due, because the judgment was subject to revocation by the court that rendered it; and, hence, that the judgment was not entitled to recognition, for any specified sum, under the full faith and credit clause in section 1 of article 4 of the Constitution of the United States. The Supreme Court of Mississippi, after reviewing some of the Louisiana decisions which we have referred to, came to the conclusion that the Louisiana judgment for alimony was not a final judgment, and hence not protected by the full faith and credit clause, because the judgment was subject to revocation or amendment, by the court that rendered the judgment, for the causes prescribed by the law of Louisiana. The opinion rendered by the Supreme Court of Mississippi is a very thorough and very able discussion of the subject; and the decree which was rendered, in so far as it was founded upon the authority of the Louisiana courts to annul or amend a judgment for alimony for any of the causes specified in article
 
 160
 
 or article 232 of the Civil Code, might be considered well founded. But we do not construe the opinion or decree rendered by the Supreme Court of Mississippi, in Gallant v. Gallant, as meaning that a Louisiana court that has rendered a judgment for alimony in favor of a divorced woman may annul or amend the judgment for an amount that has become delinquent since the judgment was rendered, on the debtor’s showing that he was financially unable to pay the alimony when it came due, or aft-erwards. If a judgment for alimony is not more substantial than that it is of little or no value or protection to the one in whose favor it is rendered. There is no reason why a judgment for alimony, as to the
 
 *681
 
 amount which has become past-due since the judgment was rendered, should not be protected by the provision in article 548 of the Code of Practice, that a judgment, when once rendered, becomes the property of the one in whose favor it has been given, and cannot be annulled or amended except by the method and for the causes prescribed by law.
 

 In 4 Tulane Law Review, 660, is an editorial comment on the decision in Gallant v. Gallant, in which the editor concludes that the decision would be wrong if construed to mean that the Civil Code of Louisiana authorizes the court to increase or reduce installments of alimony already accrued.
 

 In Gallant v. Gallant, the Supreme Court of Mississippi, in dealing with the full faith and credit clause, referred to Barber v. Barber, 62 U.S., 21 How., 582, 16 L.Ed. 226, and Lynde v. Lynde, 181 U.S. 183, 21 S.Ct. 555, 45 L.Ed. 810, and Sistare v. Sistare, 218 U.S. 1, 16, 30 S.Ct. 682, 686, 54 L.Ed. 905, 28 L.R.A.,N.S., 1068, 20 Ann.Cas. 1061. In the Sistare Case, Chief Justice White, for the court, reconciled the decision in the Lynde Case with the decision that had been rendered in the Barber Case, and announced the result, thus:
 

 “First, that, generally speaking, where a decree is rendered for alimony and is made payable in future instalments, the right to such instalments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the instalments, since, as declared in the Barber Case, ‘alimony decreed to a wife in a divorce or separation from bed and board- is as much a debt of record, until the decree has been recalled, as any other judgment for money is.’ Second, that this general rule, however, does not obfain where, by the law of the state in which, a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree,
 
 to such an extent that no absolute or vested right attaches to receive the instalments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the instalments becoming due.”
 
 (The italics are ours.)
 

 In the Sistare Case, however, the Supreme Court of the United States reversed a judgment of the Supreme Court of Connecticut [80 Conn. 1, 66 A.
 
 772,
 
 125 Am.St.Rep. 102], which held that a New York judgment for alimony payable in future installments was, under the law of New York, subject to amendment by the court that rendered the judgment, even with respect to installments that had become due after the judgment was rendered. The New York law which the court construed was section 1771 of the New York Code of Civil Procedure, authorizing the courts to “annul, vary or modify” a decree for the payment of alimony, after rendering a final judgment of divorce. The pertinent part of the section reads:
 

 “§ 1771. Custody and maintenance of children, and support of plaintiff. Where an action is brought by either husband or wife, * * * the court must * * * give, either in the final judgment, or by one or more orders, made from time to time, before final judgment, such direc
 
 *683
 
 tions as justice requires, between the parties, for the custody, care, education, and maintenance of any of the children of the marriage,
 
 and where the action is brought by the wife, for the support of the plaintiff. The court may, by order, upon the application of either party to the action after due notice to the other, to be given m such manner as the court shall prescribe, at any time after final judgment, annul, vary or modify such directions.”
 

 The Chief Justice, for the court, observed that, although there was “no decision of the court of last resort of New York dealing with the subject,” the true interpretation of the statute was that it did not permit a court that had rendered a judgment for future alimony in favor of a divorced woman to annul, vary, or modify the judgment with respect to installments of alimony that had come due after the judgment was rendered and before application was made for an annulment or modification of the judgment. Speaking of the way in which the authority of the New York courts had been enlarged by section 1771 of the New York Code of Civil Procedure, the court said:
 

 “But in view of the well-settled doctrine prevailing in New York, that no power exists to modify a judgment for alimony, absolute in terms, unless conferred by statute, and the practice of treating the right to collect accrued instalments of alimony as vested and subject to be enforced by execution, * * * we think it becomes quite clear that the mere enlargement of the power of the court so as to permit modification of the allowance for alimony upon the application of the husband did not confer the authority to change or set aside the rights of the wife in respect to instal-ments which were overdue at the time application was made by the husband to modify the decree.”
 

 At another stage.5in the reasoning, the court went further, and, immediately after quoting that part of section 1771 of the Code of Civil Procedure authorizing a court to “annul, vary or modify” a judgment for alimony, the court had this to say, which is as appropriate to articles 160 and 232 of the Civil Code of Louisiana as it is to section 1771 of the New York Code of Civil Procedure, viz.:
 

 “But it is equally certain that nothing ,in this language expressly gives power to revoke or modify an instalment of alimony which had accrued prior to the making of an application to vary or modify, and every reasonable implication must be resorted to against the existence of such power, in the absence of clear language manifesting an intention to confer it.”
 

 In Weston v. Weston, 177 La. 305, 148 So. 241, it was held that a judgment for alimony, rendered by a Michigan court, could not be made executory in Louisiana, under the full faith and credit clause of the Federal Constitution, for the reason that, by the law of Michigan (Comp.Laws 1929, § 12748), the courts of that state have authority to, modify an alimony decree so as to increase or reduce the payments, even as to past due installments.
 

 Our conclusion is that the district judge, in this case, was right in maintaining that he had no authority to release the defendant from his debt for the past-due installments of alimony.
 

 
 *685
 
 Referring now to the judgment which reduces the future alimony, from $40 a month to $20 a month, our opinion is that if a reduction is to be made, it should go into effect from January 27, 1937, that is, from the time when the defendant asked for the reduction, in his answer to the plaintiff’s petition in this proceeding, provided the conditions prevailing at that time were the same as when this proceeding was tried. The judge ordered the reduction to be made only from and after the date of his decree, April 19, 1937. But we are not prepared to say that the defendant is entitled to a reduction of the alimony from and after the time when he asked for the reduction in this proceeding. It is impossible to make a calculation or even an estimate of the net income of a person without any information as to his gross income, or as to the extent or character of the expenditures to he deducted therefrom. We find it necessary, therefore, to remand the case for the introduction of further evidence on the question of reducing the alimony from and after the defendant’s demand for it in this proceeding, and for a complete disclosure of his gross income and his expenses.
 

 Decree.
 

 The judgment for the plaintiff for $595, with interest at 5 per cent, per annum from January 12, 1937, is affirmed, and the judgment reducing the alimony from $40 a month to $20 a month, from and after April 19, 1937, is set aside, and the case is ordered remanded to the district court for the hearing of further evidence on the subject of the financial condition of the parties on and after January 27, 1937; and. for such further proceedings as may he necessary and appropriate. The defendant is to pay all costs heretofore incurred, including the costs of this appeal.
 

 FOURNET, J., concurs in the decree.
 

 HIGGINS, J., absent.