186 So. 27

**PARKER v. PARKER.**

No. 34870.

Nov. 28, 1938.

Rehearing Denied Jan. 10, 1939.

Dhu Thompson, of Monroe, for appellant.

McHenry, Lamkin & Titche, of Monroe, for appellee.

LAND, Justice.

Plaintiff was married to defendant at Monroe, La., November 16, 1920.

On April 21, 1937, plaintiff instituted suit for divorce against defendant at the matrimonial domicile on the ground of adultery, and prayed for the dissolution of the bonds of matrimony, and of the community and for its settlement, and for the permanent care, custody and control of her minor children, Adelaide Parker and J. Peyton Parker, Jr., aged respectively 14 and 7 years at the date of the institution of the suit.

Alleging that defendant was earning and receiving an average income of more than $750 per month, and that she was without funds or income to maintain and provide for herself and her children, plaintiff prayed

for alimony pendente lite from her husband in the sum of $250 per month, to be determined after hearing on rule, and, upon final trial, for permanent alimony in the same amount.

On April 21, 1937, the day the suit was filed for divorce, defendant was ordered to show cause on April 28, 1937, on or before 10 o'clock a. m. why he should not be ordered and adjudged to pay the alimony claimed, as a temporary allowance, during the pendency of the suit. Tr. 16.

On May 1, 1937, defendant filed an answer to this rule, and prayed, "that under no circumstances the alimony or allowance be fixed in excess of Seventy-five ($75.00) dollars; he prays that his rights to hereinafter plead to the merits be reserved and for all orders and decrees in the premises." Tr. 18–21.

On June 1, 1937, judgment was rendered in favor of plaintiff and against defendant, decreeing a full and complete divorce, and awarding to plaintiff the permanent care, custody and control of her minor children, Adelaide Parker and J. Peyton Parker, Jr.

In this judgment it was further decreed "that the defendant, J. Peyton Parker, is hereby ordered and condemned to pay the sum of One Hundred and Twenty-Five and no/100 ($125.00) Dollars per month payable at the sum of Sixty-two and 50/100 ($62.50) Dollars on the first of each month and Sixty-Two and 50/100 ($62.50) Dollars on the fifteenth of each month, to the plaintiff herein as alimony for the maintenance and support of herself and her minor children, Adelaide Parker and J. Peyton Parker, Jr." Tr. 175, 176.

On June 23, 1937, plaintiff applied to the court for a rule to issue to defendant to show cause why he should not be adjudged guilty of contempt of the authority of the court in his failure to comply with the above judgment.

In the application for rule, plaintiff alleged her inability to take care of herself and her children without the alimony payments, and averred that defendant had failed to pay to her the alimony due on June 15, 1937, in the sum of $62.50, then eight days past due, in spite of demand; and that the alimony in the amount of $62.50 will be due on July 1, 1937, which will make two payments past due by defendant. Tr. 23, 24.

On June 23, 1937, when plaintiff made the application for rule, the trial judge ordered the defendant to show cause on June 26, 1937, at 10 a. m., why he should not be adjudged guilty of contempt and punished therefor by fine and imprisonment, according to law. Tr. 25.

On June 26, 1937, defendant moved for a continuance of the trial of the rule on the ground of illness and confinement to his bed. The Rule was continued until June 29, 1937. Tr. 4; Tr. 26.

Again on June 29, 1937, defendant applied for a second continuance on the same ground. The Rule was continued until July 1, 1937. Tr. 5; Tr. 28.

On July 1, 1937, the rule for contempt was called for trial, and defendant, not having appeared by answer or otherwise, and plaintiff having made due proof, the rule was made absolute, and defendant was adjudged in contempt of court. It was fur-

ther ordered by the court that a warrant issue to the sheriff to arrest and bring defendant in court for sentence. Tr. 5.

Again on December 9, 1937, plaintiff applied to the court for a rule directed to defendant to show cause why he should not be adjudged guilty of contempt for failure to comply with the payments of alimony as required in the judgment of June 1, 1937.

Plaintiff alleged in her petition for rule that there is now due her by defendant, up to and including November 1, 1937, alimony in the sum of $687, of which amount defendant has paid the sum of $382.50, leaving a balance owing plaintiff of $305. Tr. 34, 35, 36.

Defendant was ordered by the court to show cause at 10 a. m. on December 16, 1937, why he should not be adjudged guilty of contempt of court and punished therefor by fine and imprisonment in accordance with the law in such cases made and provided. Tr. 36.

Defendant in his answer to rule, filed December 16, 1937, alleges that on July 29, 1937, plaintiff agreed to accept $50 per month in cash and the other things that appearer agreed to furnish, and agreed that this would be satisfactory until such time as he would be able to pay her the full amount due to her under the order of this court. Tr. 38, 39.

The rule was tried. Defendant was held in contempt of Court and sentenced to 20 days in jail. Tr. 6.

Again on December 31, 1937, plaintiff filed a petition for a rule for contempt, averring that there is now due her by defendant, up to and including January 1, 1938, alimony in the sum of $937.50, of which amount defendant has paid the sum of $382.50, leaving a balance owing plaintiff of $555. Tr. 41, 42.

Defendant was ordered by the court to show cause at 10 o'clock a. m. on January 7, 1938, why he should not be adjudged guilty of contempt of court and punished by fine and imprisonment according to law. Tr. 43, 44.

Defendant failing to appear or answer, the rule was made absolute, and defendant was adjudged guilty, and an attachment and bench warrant was ordered issued for the arrest of defendant, to be brought into court for sentence. Tr. 6.

Defendant being present in person, and having been previously adjudged guilty of contempt, was sentenced to 20 days in jail to date from January 22, 1938. Tr. 6 & 7.

Again on February 3, 1938, plaintiff filed a petition, alleging that there is now due her by defendant, up to and including February 1, 1938, alimony in the sum of $1062.-50, of which amount defendant has paid $382.50, leaving a balance owing plaintiff of $680.

Alleging that defendant refuses to comply with the judgment of the court by paying alimony in the sum awarded plaintiff and on the dates that the payments are due, plaintiff prayed that a rule issue directing defendant to show cause why he should not be adjudged guilty of contempt for failure to comply with the judgment rendered. Tr. 46.

Rule to show cause was issued, returnable at 10 a. m. on February 9, 1938. Tr. 49.

After alleging his inability to pay alimony to plaintiff in the sum of $125 per month, defendant prays in his answer to rule, that the alimony be reduced to $50 per month, and annexes thereto certain receipts and disbursements for the year 1937, and avers that the receipts and disbursements for the year 1938 which has elapsed will not exceed the average income as disclosed by the 1937 statement.

See answer and reconventional demand of defendant. Tr. 50.

In answer to the reconventional demand to reduce the alimony payments to $50 per month, plaintiff alleges that defendant has always managed and administered the affairs of the Suburban Gas Company as if he were the sole owner thereof, and expended the funds of the Suburban Gas Company as he saw fit, and was not, prior to alimony awarded plaintiff, on a salary of $150 per month, as alleged by defendant in his answer to rule, and if his salary at this time is fixed at $150 per month, that it was done for the sole and only purpose of trying to escape paying plaintiff alimony for the support of herself and children.

Plaintiff, in answer to the reconventional demand of defendant, also alleges that the Suburban Gas Company collected between $350 and $400 each and every month prior to the decree awarding plaintiff and her children alimony and that its cost of operation is a nominal sum of $50 per month.

Further answering, plaintiff alleges that defendant, prior to the transfer and as-signment of his stock in the Suburban Gas Company, owned practically all of the stock, and expended money belonging to that company, as though he were ·the sole owner. Tr. 76.

After hearing had on rule and reconventional demand, the judgment of June 1, 1937, fixing the alimony to be paid plaintiff by defendant at $125 per month, was modified on April 2, 1938, by judgment, reducing the alimony to $100 per month from February 8, 1938, the date on which defendant to rule filed his answer and reconventional demand. Tr. 178.

The case is now before us on devolutive appeal from the latter judgment.

■ (1) The fact that defendant has sought the benefit of the federal bankruptcy act cannot avail. him in this case against "liabilities for alimony due or to become due, or maintenance or support of wife or child."

This provision was originally enacted in the amendment to the Bankruptcy Act of February 5, 1903 (32 St. at L. 797, 798, Chap. 487), and has been maintained therein ever since.

See Title 11, U.S.C.A., Section 35, as amended June 22, 1938, which reads in part as follows:

"§ 35. *Debts not affected by a discharge.*

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are due as a tax levied by the United States, or any State, county, district, or municipality; (2) are liabilities for obtaining money or property by false

pretenses or false representations, or for willful and malicious injuries to the person or property of another, or for alimony due or to become due, or for maintenance and support of wife or child," etc.

(2) On February 23, 1938, defendant filed the following plea of res adjudicata:

"Now comes J. Peyton Parker, defendant herein, and respectfully pleads the judgments and sentences heretofore rendered herein, and particularly the sentence for contempt as of date December 16, 1937, and January 22, 1938, as res adjudicata herein as to all alimony accruing prior to that date."

Defendant has pleaded inability to pay the alimony.

In Snow v. Snow, 188 La. 660, 670 and 671, 177 So. 793, 796, it is said by this Court: "There is a statute, Act No. 189 of 1898, which provides that one who has failed to obey an order or a judgment condemning him to pay alimony shall not be held to be in contempt of court, if the failure was due to inability to comply with the order or judgment, even though the inability existed when the order or judgment was rendered. But the statute only relieves the delinquent debtor of punishment and of the odium of being held to be in contempt of court, for his failure to pay. It does not relieve him of the debt itself."

The plea of res adjudicata is therefore overruled.

(3) The plea of inability to pay the alimony made by defendant was not maintained by the trial judge on original hearing, when the alimony was fixed at $125

per month for the support of his wife and two minor children, or on the last hearing, when the alimony was reduced to $100 per month.

At the time of the trial of the rule in which this appeal was taken, plaintiff had the legal custody of her two minor children, a daughter of the age of 14, and a son of the age of 8 years. Both children were attending school. After her separation from defendant, plaintiff was able to secure employment and at the time of the trial was earning $70 per month, this salary together with the alimony award forming her sole means of support for herself and the two children.

At the date of the trial, plaintiff was renting an apartment for $27.50 a month, conveniently located, so that she and her children could walk to work and to school to avoid the expenses of car fare. It was necessary also for plaintiff to hire a servant at $4 per week, as plaintiff was working. Tr. 278, 279.

Due to defendant's failure to pay his alimony of $125 per month, or even one-third of the amount of alimony, plaintiff had incurred debts totaling $285. Tr. 280, 281.

In lieu of $125 per month alimony, defendant at the time of the trial had paid an average of $40.60 per month to plaintiff as his contribution toward the support, not only of plaintiff, but of her two young children.

By the statements made in Article 2 of his answer filed February 8, and from the documents attached to that answer, defend-

ant made payments on alimony as follows: $62.50 during June; $50 and $32.60 during August; $50 during September; $50 during October; $50 during November; $50 during December, or a total of $345.10. This is the total sum that was paid from June 1, 1937, when the alimony decree became effective, to February 3, 1938, when the rule for contempt was filed. During that time by the order of the court 17 payments of $62.-50 were due, or a total of $1062.50. Thus the average payment by defendant was $20.-30, and, since the payments were due semi-monthly, the average monthly payment by defendant was $40.60.

These are the actual payments made by defendant during the time when he had suggested in his answer to the first rule for contempt an alimony of $75 per month, and later only $50 per month, and when the formal decree of court ordered a payment of $125 per month.

The conduct of defendant has been from the very beginning, contrary to his pro-testations of love for his wife and his chil-dren, and of his good faith in making pay-ments for alimony, made in his answers to rules for contempt. Most assuredly, defend-ant's good faith cannot be deduced from the fact that he left town on two occasions when a rule for contempt for failure to pay alimony had been issued to him. If in fact the alimony award was excessive, de-fendant's recourse was for a reduction of the award, and defendant could have ap-plied for this long before February 8, 1938, if he had felt himself justly entitled to it. Instead of doing so, defendant defied the court, and disobeyed its orders for the pay-ment of alimony repeatedly.

It does not reflect good faith on the part of defendant, when it is considered that plaintiff's income was $70 salary (part of the time) plus $40 alimony (on the aver-age) or a total of $110 for the support and maintenance of herself and two minor chil-dren, while defendant's income was $150 salary, less $40 alimony (on an average) or an income of $110 for himself.

Defendant testified that his income was derived from a monthly salary of $150, plus such additional money as he was able to earn from time to time. Comparing the cir-cumstances under which defendant has lived since the divorce with circumstances under which the plaintiff and her children have lived, we note, first of all, that defend-ant has made frequent mention of his debts, however defendant has filed a petition, and all of these debts are scheduled. Tr. 263, 264.

Besides, defendant has resided with his mother and has taken his meals with her without expense to himself, and has the use, for his own pleasure, of an automobile be-longing to the Suburban Gas Company, while his wife and children walk. In spite of defendant's pleas that he was without funds, he was able to take a trip to Hot Springs and to take his children to New Orleans.

The major portion of the testimony ad-duced upon the trial of this case concerned the Suburban Gas Company, a corporation composed of the defendant and two of his brothers and engaged in the business of

supplying gas, water, and lights to out-lying subdivisions of the City of Monroe. Defendant was president and general manager of the corporation from its inception.

The corporation kept no set of books showing gross income, operating expenses, and net income. When Federal and State income tax returns were called for, no copies were produced by defendant. When quarterly reports to the State of gas produced were demanded, none were offered. Apparently, no corporation meetings were held, no minute book was kept, no statements, etc., were regularly prepared. Tr. 214, 215.

Although defendant testified that he and his two brothers were officers of the corporation, he did not know who was the vice-president and who was the secretary-treasurer. Tr. 214.

In other words, it was a family corporation dominated by the defendant, and the plaintiff was at a great disadvantage in making any proof on the trial of this cause as to the affairs of the corporation. Defendant had sole authority to draw checks for the corporation and apparently pays himself his salary at such intervals as he sees fit. Defendant testified that his salary was $150 per month, because "that is the original idea from the starting off." Tr. 215. There does not seem ever to have been a resolution by the board fixing his salary. Nor was there ever a resolution of the board, deposing him from the office of President and General Manager, while he was in prison. Defendant would pay himself his salary by issuing checks of the corporation, payable to "cash," or in payment of his personal bills, and these checks would be charged to his salary.

Defendant filed with his answer of February 8, various statements purporting to reflect the financial condition of the corporation and his own income and expenses. It is to be noted, however, that regularly each month these statements show salary from the corporation to the defendant in the exact sum of $150. In view of defendant's direct and explicit testimony that he did not receive $150 per month, but would receive far more in some months and less in others, and in view of the further fact that no attempt was made to correlate these statements with the facts or other documents filed, it is virtually impossible to ascertain what defendant actually did receive from the Company.

But plaintiff testified that, during her marriage to defendant 17 years (1920–1937) that they have always used the money coming to the Suburban Gas Company, and that defendant signed the checks. Tr. 192.

That when plaintiff kept the books of the Company, the gross revenues would run approximately in the winter between $300 and $400, and in the summer a little less.

That during her marriage, defendant managed the affairs of the Company and expended its funds. Tr. 197.

That defendant was not on a fixed salary during the time plaintiff kept the books of the Company. That no set of books was kept by the Company to show receipts and disbursements, but that there was a little ledger in which was jotted down, once in

a while, a year's income, and that is all; that the year's income was taken from gas bills in the meter-reading book showing the correct number of the consumers of gas.

That plaintiff kept the little ledger several years ago, made out the bills every month and kept a duplicate of these, and followed that system for two or three years, until plaintiff left defendant in May 1937. Tr. 198, 199.

That there were about 47 or 50 consumers, and that all of the money collected from the bills was paid in bank in the name of the Suburban Gas Company. Tr. 199, 200.

In paragraph 1 of his answer and reconventional demand, defendant complains that the judgment for the payment of alimony in the sum of $125 per month was based on the testimony of plaintiff alone and defendant's testimony was not accepted. Tr. 50.

The trial judge, evidently, considered the plaintiff a credible witness as to the income of her husband.

In testifying as to the quantum of alimony necessary for the support of herself and the children, plaintiff fixed the alimony, including clothes for herself and the children, at $125 per month. The rent of the apartment is fixed at $27.50 a month. The grocery bill at $35 or $40 a month, and the hire of a servant at $4 per week, or about $16 a month, making a total expense per month of about $83.50. Tr. 279.

Plaintiff had testified that she could provide for herself on her salary of $70 a month, but she could not take care of her children out of her salary. Tr. 185.

As plaintiff was earning $70 per month, the trial judge was evidently of the opinion that the alimony should be reduced from $125 per month to $100 per month, which would leave the two children $16.50 per month for clothing. Considering the fact that the daughter of plaintiff is now 15 years of age, attending High School, and rapidly approaching young ladyhood, the allowance of $16.50 for clothing for both children is not excessive, in our judgment.

However, defendant attempted to have the alimony reduced to $50 per month, or about one-half of the living expenses of the two children per month. The trial judge properly refused to make the reduction, as he did not accept defendant's testimony as to his income.

On the other hand, plaintiff's testimony as to the income of defendant, her husband, amply justifies the award of $100 per month alimony, the defendant himself having prayed in his answer and reconventional demand for a reduction of the alimony to $50 per month, thereby admitting his ability to pay at least that sum as alimony.

Judgment affirmed.