CAROLINA GARCÍA TUYA, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, HON. ANTONIO R. BARCELÓ, JUDGE, Respondent; RAFAEL FERRER, Intervener.

No. 1766. Argued December 1, 1948.—Decided January 28, 1949.

*E. T. Fiddler, José G. González, Tomás I. Nido,* and *Mariano Canales,* for petitioner. *Wilson P. Colberg,* for intervener, defendant in the main action.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

In a divorce proceeding filed by Carolina García Tuya against her husband Rafael Ferrer, the District Court of San Juan fixed the alimony to be paid by the defendant to the plaintiff for herself and their minor son, in the amount of $200 monthly. The defendant complied with said order for several months. The complaint in the divorce proceeding was dismissed and plaintiff appealed to this Court.

After the appeal was taken and on or about June 25, 1947, the defendant filed a motion in the lower court on "Rendition of Rents Collected" (sic) wherein he asked the plaintiff to report the lease contracts and the rents collected by her in respect to the house situated in 12 McKinley Street, Santurce, which was a conjugal property, and which had been assigned to the plaintiff by the court as her residence during the divorce proceedings.

On July 11, 1947 the plaintiff filed a motion praying the court to order the defendant to deposit in court $325 for stenographer's fees, and $500 for judicial expenses including attorney's fees, all in connection with the appeal taken by

the plaintiff. The defendant opposed this motion on the ground that he lacked sufficient funds to make those payments.

On September 2, 1947 the parties filed a stipulation which was approved by the lower court and which, insofar as material to this appeal, reads thus:

"1. That the parties have agreed that Rafael Pablo Ferrer García, the minor child, shall attend the Military Academy of Staunton, Virginia, during the present school year, and subsequently if the Academy accepts him. . . .

"3. That all the expenses and disbursements that the minor might incur during the time he attends said Academy, shall be assumed by the father including the transportation of said minor from Puerto Rico to the point of destination and back to the Island when he finishes his course. . . .

"6. The parties agree that during such time as the minor remains in the United States the pension of $200 monthly fixed by the court for the plaintiffs shall be reduced to $100 monthly, provided that as soon as the minor returns to Puerto Rico for any reason whatsoever the pension shall be raised automatically to the original amount of $200.

"7. It is further agreed by the parties that they do not waive any right to which they are entitled under the provisions of the Civil Code applicable to the present situation."

On December 18, 1947 the defendant filed a motion praying the court to reduce the alimony to be paid to the plaintiff from $100 to $25 monthly, alleging as the only ground therefor, that the expenses incurred by their minor son in school "practically exceed the monthly income of the defendant, including the amount required for his personal expenses."

On January 8, 1948 the plaintiff filed the accounts which defendant had required in connection with the lease of the house she occupies.

On March 29 the lower court rendered judgment wherein it disposed of plaintiff's motion on *litis expensas* in connection with the appeal taken by her from the judgment dis-

missing her complaint in the divorce proceeding, as well as defendant's motion seeking a reduction of the alimony from $100 to $25 monthly. The dispositive part of said decision reads thus:

"(a) That the defendant should pay to the plaintiff an alimony, for herself of $25 monthly; making it retroactive to the time when defendant filed his motion on reduction of alimony, that is, to December 18, 1947, provided that as soon as the minor Rafael Ferrer García returns to his mother's side, plaintiff herein, the defendant shall pay a pension to his son, through the plaintiff, of $100 monthly in addition to the $25 monthly which he is bound to pay to the plaintiff for herself.

"(b) The defendant shall deposit in the Office of the Clerk of this Tribunal the amount of $325 as stenographer's fees for the transcript of the record for the appeal taken by the plaintiff from the judgment of this Tribunal in the main case of divorce, in the above entitled case, from which amount the fees shall be paid to the stenographer of this court, Antonio Cortés Hernández, by the clerk of this Tribunal who shall compute said fees in accordance with the schedule. The aforesaid amount of $325 shall be deposited by the defendant within the period of twenty (20) days, to be counted from the notice of this judgment.

"(c) The defendant is further ordered to deposit, within the period of twenty (20) days, to be counted from the notice of this judgment, in the Office of the Clerk of this Tribunal, the amount of $300 for other judicial expenses and for the fees of plaintiff's attorney in said appeal; and that the defendant may deduct from said amount whatever amounts in excess of the $25 monthly he may have deposited since January 1, 1948 for plaintiff's own alimony."

Plaintiff filed a motion for reconsideration as to paragraphs (a) and (c) supra, but the same was denied. At her behest we issued the writ of certiorari in this case to review the proceedings in the lower court.

▇ The only evidence which the court had for its consideration before rendering the decision appealed from was defendant's testimony at a hearing held for that purpose at

which plaintiff did not appear personally but through her attorney, and the accounts rendered by the plaintiff. Based on this evidence the court made the following findings:

That the defendant has property of an approximate value of $70,000 which yield an annual income of $7,284; that from this income the defendant has to pay taxes, repairs, conservation, water, light, janitor and the administration of his property averaging $2,988.36 annually and that only a net income remains of $4,295.64, that is, $357.97 monthly; that in order to pay the school expenses of his son he had to make a loan from a bank for $2,000, binding himself to pay it at the rate of $500 quarterly, that is, $166.66 per month; that this amount only includes the expenses of the first semester of registration and does not include other incidental expenses incurred by his son averaging $25 per month; that the defendant needs $75 monthly for his personal expenses; that he gives his mother $50 per month for his boarding with her; that he deposits in the Nova Scotia Bank $33.34 each month in a special account for his son, which he has been doing since he was born; [1] that he pays $20 monthly to his chauffeur for two hours of work every day and he spends $20 monthly in gasoline, oil, etc., for his automobile.

The court stated that the evidence had not been contradicted by the plaintiff for which reason it fully believed defendant's testimony. It concluded that "the evidence shows that he is economically unable to pay the monthly pension of $100" to the plaintiff as agreed in the stipulation between the parties, "if we consider only defendant's income after deducting the legitimate expenses and disbursements."

The court then makes reference to a decision rendered by it on October 21, 1947 (which does not appear in the record of this appeal) wherein it held that although it was proved that the defendant lacks sufficient funds, yet he has

---

[1] The account shows deposits for $6,200.

property which is now assessed in the amount of $70,000. It also referred to a comparative study which it made of §§ 100, 109 and 146 of the Civil Code wherein the basis for computing the ability to pay alimony is taken with regard to "property", the "resources" and the "income", respectively.[2] (Section 109 is clearly inapposite herein, for plaintiff did not obtain the divorce.)

In order to determine whether it was proper to reduce the alimony, the lower court passed on to consider whether the plaintiff had sufficient means of her own to provide for her maintenance during the trial, § 100, Civil Code, *supra; Manrique de Lara v. Garrosi*, 23 P.R.R. 378; *Auge v. Selosse*, 31 P.R.R. 832; and to that effect it took into consideration and analyzed the accounts rendered by the plaintiff three days after the hearing on the incident pending before it and it reached the conclusion that the plaintiff had a net income of $150 monthly from the rents of the basement of the house, which is conjugal property and in which she is living. This fact, together with the expenses which defendant alleged to have—and which the court accepted as justified and true—induced the court to reduce the alimony from $100 to $25 monthly.

The evidence introduced in the lower court was not contradicted. The plaintiff in nowise rebutted the testimony

---

[2] These sections provide:

"Section 100.—If the wife have not sufficient means to provide for her maintenance during the suit, the district court shall order the husband to pay her a sum for her separate maintenance in proportion to his means."

"Section 109.—If the divorced wife, in whose favor judgment was rendered, has not sufficient means of subsistence, the district court may allow her, in its discretion, an alimony out of the property of her divorced husband, which alimony shall not exceed one-third of his income.

"The alimony shall be revoked if it shall become unnecessary, or if the divorced wife contracts a second marriage."

"Section 146.—The amount provided for support shall be proportionate to the resources of the person giving such support and to the necessities of the party receiving it, and shall be reduced or increased in proportion to the resources of the former and the necessities of the latter."

given by the defendant as to his income and expenses. Nor did the defendant object or contradict the accounts rendered by the plaintiff. Plaintiff merely alleges in her third assignment of error that the court erred in rejecting certain items of the accounts stating the debts which she incurred in fixing and furnishing the basement in order to rent it, which debt she is still paying in monthly instalments and, hence, the erroneous conclusion reached by the court that she receives a net income of $150 per month from the rents of said basement.

As to this last aspect of the case we feel inclined to agree with the plaintiff. In the absence of any contradictory evidence, the court had no ground for rejecting that part of the accounts rendered by the plaintiff which tended to show the expenses and debts incurred by her and much less to decide that her monthly net income averaged $150. We must bear in mind that the court accepted as true the whole testimony of the defendant including the debts which he alleged to have, besides his expenses, because plaintiff did not present any evidence to the contrary. The same rule should have been applied in considering the accounts rendered by the plaintiff or the court should have required additional evidence if it had any doubt as to some particular item. The court not only failed to do this, but, without any authority therefor, it reduced the item which specified the expenses incurred by the plaintiff in repairing the basement and assessed, of its own account, certain articles—a washing machine and a refrigerator—and deducted said assessment from the total amount. Nor was the court authorized to reject, in the absence of justifiable evidence, the amount of the debts which plaintiff specified in her accounts that she still had to pay from her income. It had no contradictory evidence as to the debts of the defendant and yet it accepted them. We see no reason for its acting in a different way in each case.

■ In brief, and as to this aspect of the case, we believe that in view of the evidence presented, the court erred in deciding that plaintiff had a net income of $150 monthly besides the alimony of $100 paid to her by the defendant and, consequently, that it abused its discretion in reducing said alimony to $25 monthly. Although we have held that ". . . considerable liberty or discretion must be left to the trial court" in fixing the alimony and *litis expensas, Rigau* ·v. *District Court,* 56 P.R.R. 199, this does not mean that the courts can go beyond the evidence presented. Nor can they accept as justifiable certain expenses which are clearly immaterial in a case of this nature.

■ Since this case shall be remanded to the lower court for further proceedings, we deem it pertinent to call the attention of the court to certain items of expenses alleged by the defendant which should not be taken into consideration in fixing, definitively, the amount of alimony to which plaintiff is entitled. We mean the $33.34 monthly that defendant deposits in favor of his son in a savings account. No matter how praiseworthy, and it is to the highest degree, may such an action on the part of the defendant be, as a good father, if it were shown that the mother does not have sufficient means for her maintenance, said item should not be taken into consideration in order to ascertain defendant's ability to pay. Likewise, the expenses of chauffeur and gasoline, can have no preference. Although the court may take into consideration other obligations of the husband, it should always give the wife priority. Sections 143 and 144 of the Civil Code and the ruling in *Echandi* v. *Parés,* 57 P.R.R. 166.

■■ As to the first assignment of error, that is, that the court provided in its decision that the reduction should be retroactive to the time when defendant filed his motion, which provision petitioner maintains is contrary to our decision in *Valdés* v. *Hastrup,* 64 P.R.R. 569, we do not agree.

This case presented a different situation for it dealt with past-due alimony and we held that although an alimony granted in cases of divorce is always subject to modification by the court, ". . . the majority rule found in continental United States [is that] this power of modification extends only to future support. . ." In the case at bar the defendant did not move for the modification of the monthly allowances in arrears. His petition refers only to future allowances from the day he filed his motion. It is from this date on, and not with respect to past-due alimony, that he alleged he was unable to pay the amount fixed. Just as in cases where the alimony *pendente lite* is fixed to take effect from the date it is sought during the divorce proceedings and not from the day that the court disposes of the motion, a modification of the allowance with respect to not past-due and accrued alimony can be made retroactively to the time when said modification was sought if the evidence justified it. It was so held in *Snow* v. *Snow*, 177 So. 793, 801 (La. 1937) cited in *Valdés* v. *Hastrup, supra,* wherein it was said: "Referring now to the judgment which reduces the future alimony, from $40 a month to $20 a month, our opinion is that if a reduction is to be made, it should go into effect from January 27, 1937, that is, *from the time when the defendant asked for the reduction* . . . provided the conditions prevailing at that time were the same as when this proceeding was tried." (Italics ours.)[3] The first error assigned is nonexistent and, consequently, so is the second.

The decision appealed from should be annulled and the case remanded for further proceedings not inconsistent with this opinion.

---

[3] This does not mean, and as a matter of fact it did not happen in this case, that the husband is not bound to continue paying or depositing the alimony originally fixed until his motion seeking a reduction thereof is disposed of.